STATE OF MISSOURI, Respondent, *v.* JOHN McWILLIAMS, Appellant.

### April 22, 1879.

1. Where the statute prohibits, in one clause in the alternative, the advertising, exposing for sale, and selling of lottery-tickets, the clause may be treated in an indictment as though it created one offence, and they may be united in one count.

2. A motion to quash, not followed by a motion in arrest, will not be reviewed in the appellate court.

3. The contract between Gregory and the town of New Franklin reserved to the former the right to abandon his contract in case of legislative or judicial interference, but gave him no right to suspend the operation of the contract during the time of such interference.

4. The act incorporating the town of New Franklin, and its several supplements, gave no warrant for selling lottery-tickets in Missouri on June 28, 1878.

H. A. CLOVER, for appellant: The joinder of two or more distinct offences in one count will not be permitted.— *The State* v. *Howe*, 1 Rich. 260; *Reed* v. *Parker*, 1 Park. Cr. 481; *United States* v. *Sharp*, Pet. C. Ct. 131; *The State* v. *Bridges*, 24 Mo. 353; *The Commonwealth* v. *Simonds*, 2 Mass. 163.

ED. P. McCARTY, for respondent: The information

charged but one offence.— *The State* v. *Hindman*, 4 Mo.
App. 582 ; *The State* v. *Murphy*, 47 Mo. 274. No motion
in arrest having been filed, the court cannot review the
action of the trial court in overruling the motion to
quash. — *Lancaster* v. *Touhey*, 62 Mo. 121 ; *Curtis* v.
*Curtis*, 54 Mo. 351 ; *Matlock* v. *Williams*, 59 Mo. 105.

Lewis, P. J., delivered the opinion of the court.

This cause was tried before a jury in the Court of Crim-
inal Correction, upon an information which charges that the
defendant, " on the 28th day of June, 1878, and on divers
other days, wrongfully and illegally did sell, and expose to
sale, and keep on hand for the purpose of sale, and did ad-
vertise and cause to be advertised for sale, and did then and
there aid and assist and was concerned in the sale and ex-
posure to sale of certain lottery-tickets, or shares or parts of
lottery-tickets, in a certain lottery known as the Missouri
State Lottery," etc. The jury found the defendant guilty,
and assessed his punishment at a fine of $1,000. There
was a motion to quash the information, on the ground,
chiefly, that it embraced different and distinct offences in
one count. The court's refusal to sustain this motion is
assigned for error.

In *The State* v. *Hindman*, 4 Mo. App. 582, an informa-
tion framed substantially in the same language was held
to be good. The defendant's counsel asks us to review our
decision in that case, and supports his application in an in-
genious argument presented with undeniable force. He
points out the distinction between a series of distinct acts
constituting together a single offence, and a number of acts,
each being in itself a separate offence. Thus, quoting from
*The Commonwealth* v. *Eaton*, 15 Pick. 273 : " It is true
that an offer to sell, without selling a ticket, is an offence
by the statute, but an offer to sell and actually selling is
but one offence. A sale, *ex vi termini*, includes an offer to
sell." So, publishing and causing to be published a certain

libel constitute but one act, and therefore but one offence. But the learned counsel insists that if both the acts and the offences be distinct and independent of each other, they cannot be joined in the same count. He proceeds to analyze the charges in the present information, and finds them reducible to three independent accusations, viz.: 1. The selling and causing to be sold, etc. 2. The exposing and causing to be exposed to sale, etc. 3. The advertising and causing to be advertised for sale. But the reduction stops too soon. If every sale includes an offer to sell, why may it not also include an exposure to sale? And since advertising for sale is but an auxiliary of exposure to sale, why may not both acts be considered as only so many steps to the single offence of selling? It is no answer to say that each step is severally prohibited, and therefore a distinct offence; for it is already shown that an offer to sell may be a distinct offence, and yet, when coupled with an actual sale, it becomes only an element in the offence of selling. But we are not dependent upon this reasoning for a defence of our conclusions in *The State* v. *Hindman.* We find them unequivocally sustained in *The State* v. *Murphy*, 47 Mo. 274. The defendant was charged in one count with keeping open a tippling-shop on Sunday, and with selling on the same day, to divers persons, one glass and gill of beer, one glass and gill of whiskey, etc., each for the sum of ten cents, contrary, etc. Here were several distinct accusations, each capable of standing by itself. Even the keeping open was not necessarily included in the selling. Either act could have been performed without the other. Every sale made was also a separate offence against the statute. Said the court: " The rule is that no more than one offence can be charged in one count; but there are exceptions. When a statute in one clause forbids several things, or creates several offences in the alternative which are not repugnant in their nature or penalty, the clause is treated in pleadings as though it created but one

offence; and they may be all united conjunctively in one count, and the count is sustained by proof of one of the offences charged." In the present instance, the statute forbids in one clause, in the alternative, all the acts which are conjunctively charged in the information. Wag. Stat. 503, sect. 28. This brings the pleading within the letter of approval by the Supreme Court.

But were this a new question, and involved in any doubt, another difficulty would oppose the defendant's claim. It is a settled rule of practice that a motion to quash will not be reviewed by an appellate court, where it was not followed up in the court below by a motion in arrest of judgment. *The State* v. *Conrad*, 21 Mo. 271. The defendant filed no motion in arrest in the present case, and even if the informations were found to be defective, there could be no reversal on that account.

The defendant claims protection against this prosecution, under the act incorporating the town of New Franklin, approved January 16, 1833, and the several supplementary enactments, with the contracts and transfers made by their authority. The trustees of the town were authorized to raise by lottery the sum of $15,000 for the construction of a macadamized road from New Franklin to the bank of the Missouri River, and were also empowered to contract with any person to have the lottery drawn in any part of the United States, on such terms as they should consider most advantageous. On June 1, 1842, an agreement was entered into whereby the trustees did " sell, dispose, transfer, and set over " to Walter Gregory " the said lottery, and all right to control the same; " in consideration whereof Gregory was to pay to the trustees the sum of $250 on the first day of January and the first day of June in each year, until the sum of $15,000 should be fully raised to the trustees, or to any person by them authorized to receive the same. The terms, as to amounts and times of payment, were somewhat modified by certain stipulated credits and

subsequent extensions. It is conceded that if the Gregory contract was still in force and unexpired on the twenty-eighth day of June, 1878, the defendant, as an agent of the assignees of that contract, has a good and sufficient defence. It is also conceded that, in the ordinary and uninterrupted course of the payments as stipulated for, the entire sum of $15,000 would have been raised and the authorization of the lottery would have expired in July, 1877.

The Gregory contract contains the following stipulation: "And the respective parties further agree that the party of the second part (Gregory) shall not be bound by this agreement in the event of any interference by the Legislature, judiciary, or any other power, so that he cannot conduct the business; in which case, payments to be made by him to time of such interference only." There was testimony at the trial tending to show that the business of selling lottery-tickets under the New Franklin franchise, in the city of St. Louis, was stopped by police interference from June 15, 1876, until March 4, 1878. The last payment made by the assignees to the trustees was in June, 1876. It is claimed for defendant that the period during which the business was suspended by police interference must be left out of the computation, and that the assignees were entitled to have as much more time added to the duration of their franchise as was taken away by the interference.

The vital question is, whether the stipulation above quoted, if enforced on the part of Gregory or his assignees, operated a final abandonment of the contract, or merely a temporary suspension of its obligation, with a corresponding extension of the time for making payments.

The question seems to answer itself in the statement. In the contingency supposed, Gregory "shall not be bound by this agreement." Does this mean, not bound by a particular stipulation only, as that which fixes the dates for the payments? Not at all, but by the whole agreement,

and any or all of its stipulations. When he thus ceases to be bound by the agreement, the other party is released and the agreement ceases to exist. By what provision may it afterwards be revitalized? Certainly not by the succeeding clause: "In which case, payments to be made by him to time of such interference only." Here the whole matter ends. Not a word follows, or appears elsewhere, indicating a future revival, in any event, of the obligation to pay. If such a thing had been intended by the parties, it could have been clearly expressed in a few additional words.

It appears from the testimony that no payment was made by the assignees from the beginning of the alleged interference up to the time of trial, in September, 1878. Let it be admitted that the interference was such as, under the contract, would justify the assignees in withholding payments. The interference ceased in March, 1878; so that, according to the defendant's theory of suspension and revival, a payment was due in July following. Suppose the trustees had sued for this. The answer and defence would have been, that by reason of the interference the assignees were no longer bound by the agreement, and that their obligation of payment was to the "time of such interference only." The trustees would then have searched the agreement in vain for a provision whereby they might enforce the collection notwithstanding. It may be suggested that the assignees' resumption of the use of the franchise, upon the cessation of the interference, would imply a waiver of their right to abandon for that cause. But the only effect of such a waiver would be to keep alive the obligation according to its original terms. The semi-annual payments would then be due for the whole period of the interference, as well as for any time before or after it. The franchise would thus terminate precisely as if no interference had existed, to wit, in July, 1877.

It may be argued that Gregory could never have intended to deprive himself of a valuable franchise because of a

trivial interruption in its enjoyment. But we have nothing to do with his motives, when his contract speaks for itself in plain terms. He at least secured for himself an exclusive privilege of determining whether an interruption for a single day, or for a longer period, would so far diminish the value of the franchise as to induce its surrender, or whether the interruption would be of so little consequence as not to interfere with a continued adherence to the agreement. This exclusive option was perhaps as much as the trustees were willing to concede.

The stipulation we are considering appears in the very same words in the Hospital Lottery contract, made with Dudley S. Gregory in 1835. In *The State* v. *Hawthorn*, 9 Mo. 391, our Supreme Court referred to it as a reservation by Gregory of the right to abandon his contract, not to suspend its operation merely, in the event of legislative or judicial interference. True, there was in this connection no question of interpretation before the court. But the expressions used by Judge Napton show that no doubt was supposed to arise upon the face of the stipulation as to its true intent and meaning.

Upon the whole, it is clear that if the alleged interference with the business of the assignees was such that they might elect to be no longer bound by the agreement, and if they did so elect, then the agreement ceased as to both parties, and the lottery franchise was by their own choice abolished in the hands of the assignees.

If, on the other hand, the alleged interference was not sufficient for such effects, or if it was sufficient, and the assignees refused nevertheless to exercise their option and abandon the contract, then the franchise ceased by virtue of its own limitation in July, 1877. It is therefore unnecessary to inquire whether the alleged interference was or was not of the character contemplated in the stipulation.

The action of the court below in giving and receiving instructions was in harmony with the views herein expressed. The judgment is affirmed. All the judges concur.