(98 App. Div. 270)

PEOPLE v. EBEL.

(Supreme Court, Appellate Division, Second Department. November 18, 1904.)

1. GAMING—POOLROOMS—PROSECUTION—EVIDENCE.

On a prosecution under Pen. Code, § 351, for receiving and recording money bet on a horse race, where the prosecutor testified that at the place where the offense occurred there were placards on the wall stating the names of the horses which were to compete in specified races, certain placards taken from defendant at the time of his arrest, containing what might be inferred to be the names of race horses, were not admissible against defendant, without proof that the cards were not used or to be used upon a race course, even if they were similar to the placards on the walls of the alleged poolroom, and were intended to be used in the registration of bets, of which there was no proof.

2. SAME—PREJUDICIAL ERROR.

The court having charged that a few days after the offense defendant was arrested, and certain things found upon him were introduced in evidence, "because of the fact that he had denied having any connection with the poolroom," the admission of the placards in evidence could not be regarded as harmless error.

Appeal from Kings County Court.

William J. Ebel was convicted of receiving, registering, and recording money bet on the result of a horse race, in violation of Pen. Code, § 351, and he appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

Henry F. Cochrane, for appellant.
Robert H. Roy, Asst. Dist. Atty., for the People.

WILLARD BARTLETT, J. There was an error in the admission of evidence upon the trial of this indictment which entitles the defendant to a reversal of the judgment. The fourth count of the indictment, upon which the conviction is based, charged that on the 20th day of April, 1903, the defendant, in Kings county, and not upon any authorized race course, did feloniously receive, register, and record, and aid, assist, and abet in receiving, registering, and recording, the sum of $4, bet and wagered by one Albert Winters upon the result of a certain horse race thereafter to be run at St. Louis, in the state of Missouri. The testimony given in support of this count tended to show that the defendant had committed the offense with which he was thus charged on the date stated in the indictment, to wit, the 20th day of April, 1903, at a poolroom at or near the corner of Harrison avenue and Bartlett

street, in the borough of Brooklyn. The chief witness against him was Albert Winters, a private detective. According to the testimony of this witness, there were placards on the wall stating the names of the horses which were to compete in specified races at St. Louis. He selected one of these horses, wrote the name on a slip of paper, and gave the paper, together with $2, to the defendant. "My horse came in second," said the witness, "and I got one dollar back. I came out even—lost one dollar and won one dollar." On his cross-examination, being questioned in regard to the placards in the poolroom, Winters said that he had preserved some of the placards; that they were in court; and that he got them from the defendant. Further inquiry, however, developed the fact that these placards were taken from the defendant at the time of his arrest, on May 1, 1903, 10 days after the occurrence in the poolroom which was the subject of the indictment; and it was also made distinctly to appear that they had no relation whatever to the events of that day. "They are not the same placards," said Winters, "that applied to the races that were run on the 20th of April." When counsel for the defendant discovered this fact, he asked that the testimony in reference to the taking of these placards from his client be stricken out. His motion was denied, and he duly excepted; and later on in the trial the placards in question were introduced in evidence over the defendant's objection and exception.

The submission of these printed cards to the jury is sought to be justified by the learned assistant district attorney upon the ground that their possession by the defendant showed guilty knowledge or intent on his part, and hence they became admissible, although tending to prove the defendant guilty of another crime. In the absence of any explanation as to their use or meaning—and none was furnished in the testimony—the placards taken from the defendant at the time of his arrest do not tend to establish the commission of an independent crime, or to establish anything. By and of themselves, they are meaningless. There was no proof that they were similar in character to the placards on the wall of the poolroom where the defendant was alleged to have received the $2 bet by Winters on the 20th of April. Eleven of those which were admitted in evidence have been submitted to the Appellate Division upon this appeal. They are cards of pasteboard, about 8 inches long, 3½ inches wide, and the following copy of the printed matter upon one of them gives a fair idea of the character of all:

| 3 | JAMAICA | ¾ Mile |
|---|---------|--------|
| 1 | Ascension | 108 |
| 2 | Cameron | 120 |
| 3 | Demurrer | 120 |
| 4 | Minotaur | 98 |
| 5 | Musketeer | 116 |

Farrell Entry.

No doubt, a jury might guess that this card referred to a horse race, and that the names were the names of race horses, and that the card was designed for some use in connection with a racing contest; but there was not the slightest proof to this effect; and,

even if there had been such proof, and it had furthermore appeared that these very cards were intended to be employed in the registration of bets, their possession would not tend to convict the defendant of the felony denounced by section 351 of the Penal Code without proof that they were not used or to be used upon a race course. People v. Stedeker, 175 N. Y. 57, 67 N. E. 132.

If I am right in thinking that these placards, in the absence of explanatory proof, did not constitute intelligible evidence of any kind, it may be argued that their admission, in that view, was harmless, and affords no substantial ground for reversal. The answer to this argument is that the trial court treated them as competent evidence affecting a vital point in the case; that is to say, the credibility of the defendant, who was a witness in his own behalf. While admitting on the stand that the alleged poolroom was a betting place, he denied that he had participated in any betting transaction there on the 20th of April, or received any money there on a bet made by Winters, or any one else. He also swore positively that he was not connected with the place. Referring to his testimony in this respect, the learned county judge said in the course of his charge to the jury:

"A few days after that this defendant was arrested in this place, and certain things found upon him were introduced in evidence because of the fact that he denied having any connection with this place whatever."

The things thus referred to were the placards in question found in the possession of the defendant at the time of his apprehension. I think I have already shown that they ought not to have been admitted in evidence at all; but if it be assumed that their admission, though erroneous, might have been harmless in the absence of specific instructions as to their effect, it became most injurious when the jury were told, as they were told, in substance, by the passage which I have quoted from the judge's charge, that the possession of these placards tended to prove that the defendant testified falsely when he denied being connected with the poolroom where the offense was alleged to have been committed. It is utterly impossible to find anything on or about the placards or in the testimony concerning them which has the slightest tendency to prove anything one way or the other concerning the defendant's connection with the poolroom. In view of the court's language on this subject, the jury may well have been led to discredit the defendant's testimony, when otherwise they might have believed him; and it cannot be held that the erroneous reception of documentary evidence which could have had such an effect may be disregarded as unproductive of injury.

For the foregoing reasons, I think this judgment should be reversed. I have not overlooked the analogy which has been suggested between the placards under consideration and burglars' tools found in the personal possession or in the dwelling of a defendant charged with burglary. That such implements may be exhibited to the jury, when accompanied by proof tending to show that they were actually used in the particular burglary, or were adapted to such use, has frequently been decided in this and other

states. People v. Larned, 7 N. Y. 445, 452; Ruloff v. People, 45 N. Y. 213, 223; People v. Wilson, 7 App. Div. 326, 40 N. Y. Supp. 107, affirmed 151 N. Y. 403, 45 N. E. 862; People v. Hope, 62 Cal. 291; Commonwealth v. Williams, 2 Cush. 582. It has also been held, as in the case last cited, that even tools not adapted to the particular burglary under consideration may be received in evidence if they were found with others appropriate for the crime. There the prosecuting officer laid before the jury a lot of implements taken from the possession of the defendant, some of which might probably have been used in the alleged burglary, while other instruments among them were not adapted to the commission of that particular offense. "Without sanctioning the admission of evidence merely tending to show that the defendant had in his possession instruments adapted to the commission of other crimes," said the Supreme Judicial Court of Massachusetts, "we think we may sustain the present ruling as justified by the character of a portion of the tools and instruments thus found and exhibited as a mass or entire parcel." I hardly think any case can be found, however, which goes so far as to hold that in a prosecution for burglary the district attorney may put in evidence implements which he has expressly proved not to have been employed in the commission of the offense for which the defendant is on trial, and which were not found with instruments adapted to the commission of that offense. Even if we indulge in assumptions to the extent of likening the placards here to burglars' tools, we have the clear, express, and unequivocal declaration of the principal witness for the people to the effect that these documents were not used in perpetrating the offense charged in the indictment.

I think we should reverse the judgment appealed from, and let the defendant have a new trial. All concur.