# STATE vs. TOBIN

(No. 1186, June 3rd, 1924; 226 Pac. 681.)

STATUTES—TITLE OF ACT—AMENDMENTS—GAMING—INFORMATION— MOTION TO QUASH—DISTINCT ACTS IN SAME COUNT—PRELIMINARY EXAMINATION—COMPLAINT BEFORE JUSTICE—CRIMINAL LAW—INSTRUCTIONS.

1. The title of an act, reciting that certain designated Sections of the statutes are to be amended and others repealed is a sufficient compliance with Article III, Section 24 of the Constitution, the amendatory matter being germane to the subject of the original act.

2. If the title of an act purports to amend a Section of the law, then the act is limited in its scope to the subject-matter of the Section amended and matter not germane to the Section as it stood originally cannot be introduced.

3. The purpose of the constitutional provision requiring the subject of a bill to be clearly expressed in its title, was to prevent surprise or fraud in legislation, by means of provisions in bills of which the titles give no intimation.

4. The object of Chapter 65, Laws 1901 amending Sections 2178 and 2183, R. S. 1899, (Secs. 3389, 3391 Comp. Stats. 1920) and repealing other sections of an act originally enacted as Chapter 27, Laws 1869 restricting gaming is sufficiently indicated by its title.

5. An information under Comp. Stats. 1920, Sections 3389, 3391, charging that defendant dealt, played, conducted and carried on certain prohibited games, as well as poker and other games played with cards, dice and other devices for money, checks, credits and other representatives of value, charged a crime.

6. An information for gaming, charging in the language of the statute what the game is played for, is sufficient.

7. While it is a rule, that where a statute makes punishable either of two distinct acts connected with the same general offense, they may be coupled in one count, when committed by the same person, no purpose is subserved by charging acts, the commission of which cannot possibly be sustained.

8. In view of Comp. St. 1920, § 7431, making preliminary examination necessary only in felony cases, where defendant·was complained against, for gaming, before a justice of the peace, but original information was filed directly in the district court without dismissal of complaint, on motion to quash information, proceedings before justice may be considered as abandoned.

9. In a gaming prosecution, where specific crime is charged was fixed as having been committed January 22d, evidence of witness as to totally different and separate crime on January 23d was inadmissible; but objection thereto at close of evidence because there was not a charge of crime on January 23d was too late, where no motion to strike was·made.

10. Where evidence showed crimes to have been committed both on January 22d and January 23d, an instruction which permitted finding of guilty of gaming either date was misleading and erroneous.

11. Gambling paraphernalia in possession of defendant, in place controlled by him, is admissible in corroboration of other testimony· of crime committed on different date, at least when shown to be the same or similar to that used when crime was committed.

12. In a prosecution under Comp. St. 1920, §§ 3389, 3391, where evidence showed defendant carried on and conducted games of chance under section 3389, his act in ''permit-

ting'' such games was necessarily included in act of con-
ducting and carrying on and merged therein, and hence
there should be imposed sentence for but one offense.

APPEAL from District Court, Natrona County; ROBERT
R. ROSE, Judge.

R. S. Tobin was convicted of a violation of gaming laws,
and he appeals.

*M. F. Ryan,* for appellant.

This case follows within the rule announced in State v.
Peterson, and State v. Romano, 27 Wyo. 244 as to unauthor-
ized seizures; see also State v. Court (Mont.) 198 Pac. 363;
where the prosecution files a complaint before a Justice it
cannot be abandoned by filing a direct information without
the consent of defendant. Appellant's plea in abatement
should have been sustained; 12 Cyc. 355. The motion in
arrest of judgment should have been sustained, no offense
being charged; 3389 C. S. is unconstitutional; Art. III,
Sec. 24. The game of poker is not prohibited by law; the
information does not state what stakes were played for; sec-
tion 3389 C. S. as originally enacted related to gaming
licenses (2178 R. S. 1899) no other subject was expressed
in the title. The amendment changed the subject without
changing the title; the act is void, Lewis' Suth. Stat. Const.
Sec. 120. The amendment is not germane to the subject of
the original act, and is void, Ex Parte Cowert, (Ala.) 9 So.
225; Board v. Aspen M. & S. Co. (Colo.) 32 Pac. 717; Do-
lese v. Pierce, (Ill.) 16 N. E. 218; State v. Sugar Co., (La.)
31 So. 186; State v. Cornell, (Neb.) 74 N. W. 432; State v
Bowen (Neb.) 74 N. W. 615; State v. Tibbetts, (Neb.) 71 N.
W. 990; Armstrong v. Mayer, (Neb.) 83 N. W. 401; People
v. Fleming, (Colo.) 3 Pac. 70; Mack v. State, (N. J.) 36
Atl. 1088; Astor v. Railway Co., (N. Y.); 20 N. E. 594;
Kennedy v. Le Moyne, (Ill.) 58 N. E. 903. Gambling is a
statutory crime and the acts must be within the legislative
intent; the doctrine of ejusdem generis applies, State v.
Walsh, 43 Minn. 444, 45 N. W. 721; Lewis' Suth. Stat.

Const. 816. The information is indefinite, People v. Carroll, 22 Pac. 129, Anthony v. State, 23 Tenn. 83; exhibits unlawfully seized were improperly received in evidence; the court erred in refusing defendant's requested instruction for a directed verdict. The court erred in giving instruction No. 3; Fields v. Territory, 1 Wyo. 78, State v. Jones, 27 Wyo. 46; State v. Wells, (Wyo. decided March 6, 1923), Wickard v. State, 109 A. L. A. 45; the court erred in giving instructions numbered 6 and 8; the court erred in refusing defendant's requested instruction defining an accomplice, Smith v. State, 10 Wyo. 157, also as to the rule requiring corroboration of an accomplice, Clay v. State, 15 Wyo. 42, and in refusing defendant's requested instruction as to weight of certain evidence.

*David J. Howell,* Attorney General and *E. H. Foster,* Prosecuting Attorney for the State.

The rule announced in the Peterson case is not applicable here; the warrant was lawfully issued upon proper affidavit. There was no violation of rights guaranteed by Article I, Section 4, Const.; moreover the officer had authority to arrest for an offense committed in his presence, 1615 1616 C. S., the evidence showed the commission of an offense in the presence of the officer and he had authority to seize property used in connection with the offense for which the arrest was made, Wiggin v. State, 206 Pac. 376, 28 Wyo. 480; State v. Mausert, 95 Atl. 991; State v. Brown, (Wash.) 145 Pac. 69; Gatchell v. Page 69 Atl. 624; 5 Corpus Juris 434; Holker v. Hennessey, (Mo.) 42 S. W. 1090; State v. Edwards, (W. Va.) 41 S. E. 429; People v. Cona, (Mich.) 147 N. W. 525; Smith v. Jerome, 93 N. Y. Sup. 202; State v. Rassan, (Ia.) 128 N. W. 960; Yeoman v. Comm. (Ky.) 224 S. W. 660; State v. Quinn, (So. C.) 97 S. E. 62; North v. People, (Ill.) 28 N. E. 966. A violation of Section 3389 C. S. is a misdemeanor; preliminary hearings relate to felonies 7431 C. S.; Nicholson v. State 24 Wyo. 354. The plea in abatement was insufficient, 1 C. J. 28, 107; denial of

defendant's motion in arrest of judgment is not properly
assigned as error, Hall Oil Company v. Barkman, 28 Wyo.
152; error in denying defendant's motion in arrest of judg-
ment is urged on three grounds, (a) invalidity of the stat-
ute 3389 C. S. for want of title; (b) that the game of poker
is not prohibited by law, (c) that the information is in-
definite and uncertain; the gaming license, Sections 2178,
2180, 2183 R. S. 1899 were amended and other sections of
the act repealed by Chapter 65, Laws 1901. The title of
the amendatory act showed its purpose and was sufficient;
the statute clearly shows an intention to include the game
of poker. Objections to the form of the information were
waived by defendant in not moving to quash, 7483 and
7487 C. S., Kappola and Lampe v. State, 15 Wyo. 418; er-
rors alleged in the acceptance or rejection of evidence are
insufficiently stated and do not comply with supreme court
rule 14 requiring a statement of points and authorities, and
hence the rulings of the trial court are presumed to
be correct, 3 Corpus Juris page 1428; Chestnut &
Smith v. Lynch (Okla.) 202 Pac. 1018; Fallon v.
Sockolove; (Cal.) 202 Pac. 909; Meister v. Harrison,
(Cal.) 206 Pac. 106; Hurt v. Mining Co., (Id.) 206 Pac.
184; Gosliner v. Briones (Cal.) 204 Pac. 19; Cornner v.
Hamilton (Mont.) 204 Pac. 489; Amer. Cigar Co. v. Ber-
ger, 221 Ill. App. 292; Riley v. So. Pac., (Cal.) 207 Pac.
704; Winterton Co. v. Gum Co., 211 Fed. 618; Blue v. Brd.
of Comm'rs., (Okla.) 198 Pac. 851; no exception was re-
served to the denial of defendant's motion for a directed
verdict. Errors alleged in the giving of instructions are
unsupported by points or authorities; instruction num-
bered 1 is sufficient under 7462 C. S.; an examination of
the others shows that they clearly state the law, and that
the authorities relied on in respect thereto, are not in point.
Errors alleged in refusing to give instructions requested by
defendant as to the evidence of an accomplice, are insuffi-
ciently stated, moreover the instruction requested is not a
correct statement of the law; the question was not involved

in Clay v. State, 15 Wyo. 60, for reasons stated in the opinion; specification of error No. 8 is not sufficient in form to present a question for the consideration of the court.

Blume, Justice.

The defendant in this case was convicted of violating the provisions of sections 3389 and 3391 W. C. S. 1920, relating to gambling, and he appeals.

1.   The first act passed in this state in relation to gambling was Chapter 27 of the laws of 1869, entitled "An Act restricting gaming." Sections 1, 5, and 8 of that act, in so far as pertinent here, read as follows:

"Sec. 1.   Each and every person who shall deal, play, carry on, open or cause to be opened, or who shall conduct either as owner or employe, whether for hire or not, *except under a license as hereinafter provided,* any game of faro, monte, roulette, lansquenette, rondo, vingt-un, commonly known as twenty-one, keno, props, or any banking game played with cards, dice, or any other device, whether the same be played for money, checks, credits, or any other representatives of value, shall be guilty" etc.

"Sec. 5.   Every person who shall permit any of the games mentioned in the first section of this act to be played, conducted, dealt, or carried on in any house, tent, booth, or shed, owned and occupied by him or her, in whole, or in part, except by a person who has received a license as herein provided, and in the room described therein, shall be guilty" etc.

"Sec. 8.   The following games and no others shall be licensed under or by virtue of the provisions of this act, viz: faro, monte, keno, rondo, lansquenette, roulette, vingt-un, commonly known as twenty-one, and props, and that any person or persons who shall keep or deal or permit to be kept or dealt, in any building or place under his or their control, any other banking game or other games of chance

for money, or other representation of value, played with cards or other devices, shall be deemed guilty'' etc.

These sections remained the law of this state until 1901, and were contained in the Revised Statutes of 1899 as sec-tions 2178, 2183 and 2185. In 1901, the legislature of this state passed chapter 65 of the Session Laws of that year, entitled ''an act to amend and re-enact sections 2178, 2180 and 2183 of the Revised Statutes of 1899, and to repeal sections 2179, 2181, 2182, 2185, 2186, 2188 of the Revised Statutes of 1899, relating to gaming.'' Section 1 of said act (now section 3389 W. C. S., 1920) struck out of the original act the phrase ''except under a license as herein-after provided'' and the phrase ''banking games'' and reads as follows:

''Every person who shall deal, play, carry on, open, or cause to be opened, or who shall conduct, either as owner or employe, whether for hire or not, any slot machine, game of faro, monte, roulette, lansquenette, rondo, vingt-un, com-monly known as twenty-one, keno, props, or any other game played with cards, dice or other devices of whatever na-ture, for money, checks, credit, or other representatives of value, shall be guilty'' etc.

Section 3 of the act of 1901 (now section 3391 W. C. S. 1920) struck out of the original section (section 5, act of 1869, section 2183, R. S. 1899) the phrase ''except by a person who has received a license as herein provided or his employee,'' and otherwise left the original section intact. It is thus seen that two material amendments were made to the original act, the first striking out all provisions in re-gard to licensing the dealing, carrying on and conducting of gambling games, and the second striking out the phrase ''banking games,'' thus including in the prohibition of the new act each and every game played as therein mentioned.

It is the contention of counsel for defendant that the act of 1901 is in violation of section 24, Article III of the Con-

stitution of this state, providing among other things that the subject of a bill shall be clearly expressed in its title. A reference in the title of the amending act to the section or sections of the statute to be amended by number, accurately indicates the general subject of the legislation to be affected by the amendment, and is not in violation of the foregoing constitutional provision, if the new matters contained in the amended section are germane to the subject of the original sections. Board of Commrs. v. Stone, 7 Wyo. 280, 291; 51 Pac. 605; 36 Cyc. 1029-1031. If not germane, then of course the title could not be said to clearly indicate the subject of legislation, and it is the contention herein that the new provisions contained in sections 1 and 3 of the Act of 1901 (sections 3389 and 3391, W. C. S. 1920) are not germane to the subject contained in the original sections as enacted in 1869. We have read the cases cited by counsel, but do not consider them in point. The purpose of the constitutional provision above mentioned was to prevent surprise or fraud in legislation by means of provisions in bills of which the titles give no intimation. Board of Commrs. v. Stone, supra. Hence we must set out to discover whether in the enactment of the Act of 1901 any such fraud or surprise was reasonably possible. In People ex rel v. Whitlock, 92 N. Y. 191, 197, the court, speaking of a similar constitutional provision above referred to, says:

"The object of that provision is fairly answered by a title giving notice to whomsoever reads, that legislation is impending which, by amending the act referred to, might touch upon the subject matter of any of its provisions."

One error into which counsel have fallen, is in thinking that the provisions of sections 1 and 5 of the Act of 1869 were enacted primarily for the purpose of licensing the dealing, carrying on and conducting of gambling. We do not think it was. Section 1 of that Act purports to be enacted, as we think, for a two-fold purpose, namely, first, for the purpose of prohibiting the dealing, carrying on,

and conducting of gambling, and secondly, for the purpose of permitting the prohibited acts, if they fall within the exception specified therein; namely, if a license was obtained. This view is strengthened, we think, by the fact that section 8 of the act of 1869, specifically provides that licenses may be issued to carry on and conduct only a few and limited number of banking games, and prohibits the carrying on and conducting any other banking games or other games, for money, etc. All that the new enactment in 1901 did, was to strike out the exception contained in section 1 of the act of 1869 and to apply the prohibition therein contained to gambling games other than those originally specifically specified therein. In other words, the prohibition originally contained in the latter. section was simply broadened. And bearing this in mind, we must not overlook the fact that chapter 65 of the Session Laws of 1901, and the title thereof, not only affect sections 1 and 5 of the Act of 1869 (sections 2178 and 2183 R. S. 1899), but also purport to repeal certain sections of the law then in existence, one of which, section 2185 R. S. 1899, prohibited the carrying on and dealing of all banking and other games for money, etc., except those specified, and the others of which related to the procurement of licenses, how they might be obtained and the amount to be paid therefor. These facts are very pertinent in determining whether or not the title clearly expresses the subject of legislation. We cannot take an isolated portion of a title to determine that. Of course, if the title of an act purports to amend, for instance, only one section of a law, then the act is limited in its scope to the subject matter of the section proposed to be amended, and nothing that is not germane to that section as it stood originally can be introduced. Such is the holding, for example, in Dolese v. Pierce, 124 Ill. 140, 16 N. E. 218 and State v. McAdams, 106 La. 720, 31 So. 187. The reason is fundamental; in such case the subject matter not germane to the original section would, necessarily, not be clearly expressed in its title. But under a title such as

we find in the case at bar, the situation is entirely different. The title of the act of 1901 gave notice to all, not alone that section 2178 and 2183 R. S. 1899 were to be amended, but that all provisions of the statutes authorizing persons to procure a license for gambling as then authorized by law, would be repealed; in other words that no more such licenses would be permitted. Reading the title of the act of 1901 in question in this light, it must be considered as purporting to amend sections 2178 and 2183, R. S. 1899, relating to gambling games, and to prohibit the issuance of any licenses therefor. As so construed, no one could have been deceived in thinking that the provisions for license would be retained as found in sections 2178 and 2183, R. S. 1899, but, on the contrary, every one must have been fairly led to believe from the title that all provisions for licenses would be stricken from every section of the act. Hence the title was clear and fairly stated the subject of the intended legislation, in so far, at least, as the sections now under consideration are concerned.

2. Counsel for defendant contends, further, that the information herein fails to charge a crime, for the reason that the games of poker and panguinqui, shown to have been dealt, carried on and conducted in this case, are not crimes in this state, and that hence to conduct them is no crime. The objection, as made, is, of course, totally devoid of merit, since the information also charges the carrying on and conducting of other games which are specifically mentioned in the statute. It charges, in Count Two, that the defendant

"did then and there wilfully and unlawfully deal, play, carry on, conduct, open and cause to be opened games of faro, monte, roulette, lansquenette, rondo, vingt-un, commonly known as twenty-one, keno, props, poker and other games played with cards, dice and other devices, for money, checks, credit, and other representatives of value."

Without reference to that, however, we shall consider the specific point mentioned. We do not say that 'there may not be force in the contention that to simply play the games of poker or panguinqui is not a crime. The provision that every person who shall "deal, play, carry on" a game, etc., was, in the original act of 1869 directed only against the person who dealt, carried on or conducted the game, and not against the mere player. Ex parte Ah Hem, 53 Cal. 246; People v. Sam Lung, 70 Cal. 515, 11 Pac. 673. And ordinarily, words used in the original act will be presumed to have been used in the same sense in the amendment. 36 Cyc. 1165. Only banking games were included in section 3389 as it was enacted in 1869, and it was said in Ex parte Ah Hem, supra, that "the person who bets *at* a banking game cannot be said to *play* the game, within the meaning of that section of the Code." The term "banking game" is excluded from the present law, but whether the word "play," still used, as it is, in connection with "deal, carry on and conduct," as in the original act, now bears an entirely different meaning from that which it bore originally, may be a question. The point may at some time become of importance, but we are not, we think, called on to decide it here, in view of the scope of the information in this case and in view of the fact that the State does not rely on the fact that the defendant merely "played" a prohibited game of chance. The mere fact, if it is a fact, that the law has not imposed a penalty for merely playing, or betting at, certain games, will not necessarily make it legal to carry on or conduct such games; the latter may, nevertheless, be criminal, if the statute makes it so. James v. State (Okl. Crim.) 113 Pac. 226, 33 L. R. A. (N. S.) 827. There can be no question that to conduct and carry on the games enumerated and contemplated in the statute, and to keep a place open for that purpose, is not in the interests of society. Its tendency is, as stated by the court in the case last cited, to "tempt men to gamble, destroy fortunes, ruin character and wreck lives. Establishments of this kind often ripen

into crime. They are hotbeds, and bring about infinite loss and demoralization to those who frequent them.''

Is it then forbidden by statute to conduct or carry on these games if played, as mentioned in the statute, for money, etc.? We think so. Counsel for defendant argues that the games enumerated in the statutes are each a ''banking'' game, that poker or panguinqui are not, and that under the doctrine of ejusdem generis, we must construe the prohibition to be directed against banking games only. We do not think that this doctrine has, in view of the history of legislation on the subject, any application here. Section 3389, W. C. S. 1920, as it was enacted in section 1 of the Act of 1869, prohibited the conducting or carrying on only of banking games, played for money, etc., unless licensed; section 8 of the Act of 1869 prohibited all games of chance other than those mentioned in section 1 of the act to be so played, and hence undoubtedly embraced such games as poker and panguinqui within its scope. And when by the Act of 1901, said section 8 was repealed, and the term ''banking games'' struck out of said section 1, the legislature clearly indicated, we think, that the prohibition contained in that act as amended should not be confined to banking games only. In fact it has been held directly, that the game of poker is embraced in language of a statute similar to ours. State v. Mathis, 206 Mo. 604, 105 S. W. 604, 121 Am. St. Rep. 687. See also Fields v. Territory, 1 Wyo. 78.

3. Counsel for defendant further claims that the information herein is so defective and uncertain that it cannot be said to charge a crime. Ordinarily, where it is claimed that the information is not sufficiently definite, the only remedy is by a motion to quash, which was not made in this case on that ground. Sec. 7483, W. C. S. 1920; 31 C. J. 801. But aside from that, we think that the information herein is not subject to the objection urged. Counsel claim that it may be construed to charge only that the games therein mentioned were conducted for money, etc., and that such a

charge does not constitute a crime. Ex parte Clark 54 Cal.
App. 507, 202 Pac. 50; Ex parte Capanna 45 Calif. App.
501, 187 Pac. 1077; People v. Carroll, 80 Calif. 154, 22 Pac.
129; Proctor v. Territory, 18 Okl. 378, 92 Pac. 389; Brown
v. State, 5 Okl. Cri. 41, 113 Pac. 219, are to that effect.
We think, however, that the information in the case at bar
sufficiently charges that the games mentioned therein were
then and there played for money, checks, credits, or other
representatives of value, and hence the crime contemplated
by the statute is, in connection with the other allegations,
sufficiently charged. Johnson v. State, 10 Okl. Crim. 597,
140 Pac. 622. It is contended that the use of the phrase
"or other representative of value," makes the charge too
indefinite. It has, however, been held that such phrase re-
fers to tokens representing money or value in the forms of
money under the doctrine of ejusdem generis, and that to
play, for instance, for candy, is not prohibited and not em-
braced in the phrase. Ex parte Gray 23 Ariz. 461, 204
Pac. 1029. However that may be, we think that an allega-
tion in the language of the statute as to what the game is
played for, should be deemed sufficient, Johnson v. State,
supra; Brand v. State, 112 Ga. 25, 37 S. E. 100, 137; Hin-
ton v. State, 68 Ga. 322. We cannot assent to anything
said in Anthony v. The State, 23 Tenn. 83 to the contrary.

We might, however, in this connection, refer to the charge
in the information that the defendant carried on and con-
ducted games of faro, monte, roulette, lansquenette, etc.
There was no pretense to prove that any games were carried
on except twenty-one, poker and panguinqui. It is said:

"The rule is well settled that where a statute makes eith-
er of two or more distinct acts connected with the same
general offense, and subject to the same measure and kind
of punishment, indictable separately as distinct crimes
when each shall have been committed by different persons
at different times, they may, when committed, by the same
person at the same time, be coupled in one count, as con-

stituting altogether but one offense. In such case the several acts are considered as so many steps or stages in the same affair, and the offender may be indicted as for one combined act in violation of law; and the proof of either of the acts mentioned in the statute and set forth in the indictment will sustain a conviction.''

Byrne v. State, 12 Wis. 525; Howard v. State 191 Ind. 232, 131 N. E. 403; State v. Jackson, 242 Mo. 410, 146 S. W. 1166; Grayson v. State, 92 Ark. 413, 123 S. W. 338; 19 Ann. Cas. 929; Bradley v. State, 20 Fla. 738; Smith v. State, 40 Fla. 204, 23 So. 854; State v. McWilliams, 7 Mo. App. 99; The People v. Mackin, 159 Ill. App. 125; People v. Gossett, 93 Cal. 641, 29 Pac. 246; Bishop's New Criminal Proc. Vol. 1, Sec. 436, and many cases cited in Wharton's Crim. Proc. (10th Ed.) Sec. 742. While this is undoubtedly the rule, at the same time, we can see no good purpose subserved in charging acts, the commission of which cannot possibly be sustained by any evidence, and which simply tend to confuse the jury, and might, at least upon request, require instructions which otherwise would be unnecessary.

4. Defendant was arrested on January 23, 1923, and brought before a justice of the peace, presumably to have a preliminary examination. No such examination was ever made, and the original information in this case was filed directly in the district court on January 30, 1923, and an amended information on March 8, 1923, without dismissal of the complaint filed in the justice's court. Defendant made a motion to quash the information herein on that ground. In the absence of a statute no preliminary examination is necessary, the proceeding being unknown to the common law. 16 C. J. 314. While no doubt proper in all criminal cases where the justice has no original jurisdiction to try a case, the statute makes it necessary only in certain cases where the crime committed is a felony. Sec. 7431, W. C. S. 1920; Nicholson v. State, 24 Wyo. 347, 354, 157 Pac.

1013. Where no preliminary hearing is had upon a complaint filed in justice court, the proceeding may, in a case like that at bar, upon a proper information being filed in the district court, be considered abandoned. Hence, we think, the motion to quash, so made, was properly overruled.

5. The defendant was informed against for offenses committed on January 22, 1923. The first witness, Becklinger, only testified to the fact that defendant was lessee of the building in which the gambling was charged to have been conducted. The second witness, Morris, who was the prosecuting witness, only identified certain paraphernalia found in the place on the night of January 23rd, 1923. These witnesses cannot be said to have fixed or attempted to fix the date and identity of the crime charged in the information within the meaning of the decisions of this court in Fields v. Territory, 1 Wyo. 78 and State v. Wells, 29 Wyo. 335, 212 Pac. 1099. We did not hold therein that it must necessarily be fixed by the prosecuting witness, but only that if fixed by a witness for the state, then evidence of other crimes is not admissible. The specific crime charged in this case was fixed as having been committed on January 22nd, 1923 by the witness Vance, who was followed by the witness Williams with similar testimony. Most of the subsequent testimony was to the same effect. The witness Dutch, however, testified to a totally different and separate transaction and crime on January 23rd, 1923, in connection with a game of panguingui. This testimony was inadmissible under the holding of Fields v. Territory, supra, decided in 1872, more than 50 years ago, and State v. Wells, supra. Counsel for defendant first objected because there was no charge in the information as to that game. From what we have said, it follows that this was not a valid objection. Wharton's Crim. Proc. Sec. 730, 27 C. J. 1022, 1024. Not until later on, but after substantially all the material testimony of the witness was in, counsel for defendant objected to the testimony of the witness because he had

not been charged with a crime on January 23rd, 1923. Even if this might be considered an objection that the evidence tended to show a crime not charged in the information, the objection came too late and no motion to strike was made. No objection whatever on the ground mentioned was made to the subsequent testimony of the witness Morris. Hence, were it not for the subsequent proceedings herein, we should probably not be inclined to disturb the judgment on account of such error. But the court instructed the jury as follows:

"You are instructed that, while the information in this case charges the offense or offenses to have been committed on the 22nd day of January, 1923, the date charged in the information is immaterial to the extent that you may find defendant guilty, if you believe from the evidence, beyond a reasonable doubt, that the offense or offenses charged in the information were committed by the defendant on either the 22nd or the 23rd day of January, 1923."

To this instruction the defendant excepted. As an abstract proposition of law, as indicated in the Fields case, the instruction was correct, but as applied to the evidence in this case, it was clearly misleading and erroneous. Bearing in mind that the evidence in the case tended to show a crime to have been committed both on January 22nd and January 23rd, it is readily seen that the jury were instructed that they might find the defendant guilty either of the crime testified to by the witness Vance and others as having been committed on January 22nd or of the crime testified to by the witness Dutch as having been committed on January 23rd. The verdict does not fix the date or identity of the crime, and simply states: "We, the jury, duly impaneled and sworn in the above entitled cause, do find the defendant, R. S. Tobin, guilty of gambling and of permitting gambling in premises occupied by defendant." Hence there is no possible way by which it can be determined of which of the two crimes testified to, the defendant was found guilty. Some of the jury may have believed Vance

and those who testified as he did; others of the jury may have believed Dutch only. In the case of State v. Washington, 242 Mo. 401, 409, 146 S. W. 1166, a somewhat analagous case, the court said:

"The defendant was entitled to a unanimous verdict of the jury upon the issues of his guilt or innocence of the particular offense for which he was on trial. Under this instruction and the general verdict returned, some of the jurors may have believed the testimony in support of the charge as to one of the gaming devices and disbelieved the testimony as to the other, while the remaining members of the jury may have found and believed conversely."

6. A search warrant was issued in this case on January 23rd, 1923, and certain paraphernalia seized under it. Counsel for defendant filed a motion to have the property returned, claiming that this case comes within the rule laid down in the case of State v. Peterson, 27 Wyo. 244, 13 A. L. R. 1284. Counsel have failed to point out wherein the slightest similarity exists between the two cases, and we have discovered none. The information, upon oath, filed in this case, and the search warrant issued thereon, appear to be regular.

Counsel, upon the trial of the case, objected to the introduction of various paraphernalia, so seized, upon the sole ground that it had not been shown that the specific things had actually been used in gambling. Counsel have cited us to no decision where that has been held to be necessary in such a case as this. Gambling paraphernalia, or paraphernalia adapted for gambling, in the possession of defendant, in a place controlled by him, would in a case like that at bar, tend to show, at least in connection with other more direct evidence, that the defendant dealt, carried on and conducted games to which such pharaphernalia is adapted, and would be admissible in evidence to corroborate other testimony of the crime charged and committed, though on a different date, at least where this paraphernalia is shown

to be the same or similar paraphernalia that was used at the time of the commission of the crime charged. The People v. Ebel, 98 App. Div. 270, 90 N. Y. Sup. 628.

7.    The defendant was charged with the violation of both sections 3389 and 3391, W. C. S. 1920, and was convicted of ''gambling and permitting gambling.'' Without· passing on the sufficiency of the verdict we may, for the purposes of this case, take it for granted that he was convicted as charged in the information; that is to say, of a violation of both of these sections, and was sentenced for both offenses separately. No objection was made to such sentence, nor is the matter urged here, but in view of the further trial of this case, we deem it best to express our opinion thereon. The evidence in this case tends to show that the defendant in this case carried on and conducted games of chance for money in violation of section 3389 supra. If he did so, he necessarily permitted these games to be so conducted and carried on; the ''permitting'' in such case was necessarily embraced in the act of ''conducting and carrying on,'' and was merged in the latter. State v. McWilliams, 7 Mo. App. 99; Howard v. State 191 Ind. 232, 131 N. E. 403; Sowle v. State, 11 Ind. 492. Hence there should have been imposed upon the defendant sentence only as for one offense. If this were the only error, reversal would not follow, since we could have directed modification of the judgment.

8.    Counsel for defendant asked an instruction that the defendant could not be convicted on the uncorroborated testimony of an accomplice or a number of accomplices alone. Counsel have not pointed out in their argument how the question is pertinent here. He has failed to state which of the witnesses he considers to have been accomplices. A number of witnesses testifying in this case were persons who played. It has been held that in a prosecution for conducting a gambling game or place, persons who merely play in the game, or at such place, are not regarded as accomplices of defendant. 16 C. J. 680. Even though some of

the witnesses testifying herein might be regarded as accomplices of defendant, there was so much other direct as well as corroborative testimony in this case, that it may be doubtful whether the instruction asked, even if technically correct—which wo do not decide—was applicable under the circumstances, or whether the refusal to give it under the circumstances was prejudicial. In view of the further trial of this case, we do not feel called on to say anything further on the point at this time.

Numerous other errors are assigned, but no reasons are given and no authorities are cited. In view of that fact we can scarcely be expected to give them any consideration.

For the error in the instruction as applied to the evidence in this case, as herein pointed out, the judgment of the district court is reversed and the cause remanded for a new trial.

*Reversed and Remanded.*

POTTER, Ch. J., and KIMBALL, J., concur.

NOTE—See (1) 36 Cyc pp. 1030, 1031; (2) 36 Cyc p. 1031 (3) 36 Cyc p. 1017 (4) 36 Cyc p. 1029 (5) 27 C. J. p. 1018 (6) 27 C. J. pp. 1019, 1022 (7) 31 C. J. p. 764 (8) 16 C. J. p. 319 (1926 Anno) (9) 16 C. J. p. 875 (1926 Anno) (10) 16 C. J. p. 969 (1926 Anno) (11) 16 C. J. p. 618.