Delbert D. LODDY, Appellant
(Defendant below),

v.

STATE of Wyoming, Appellee
(Plaintiff below).

No. 4070.

Supreme Court of Wyoming.

Oct. 25, 1972.

Robert Van Sciver, Salt Lake City, Utah, LaVoy O. Taylor, Cokeville, for appellant.

C. A. Brimmer, Atty. Gen., Jerome F. Statkus, Special Asst. Atty. Gen., Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN and GUTHRIE, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

This is an appeal from a conviction for grand larceny and destruction of telephone lines. The defendant was charged with having stolen certain copper telephone wire by cutting and removing the wire from the poles of Mountain States Telephone and Telegraph Company contrary to the statutes concerning larceny and malicious destruction of telephone lines. The jury found the defendant guilty of both felony charges, and the trial court in entering judgment and sentence ordered that defendant be imprisoned for a term of not less than three nor more than four years for the crime of grand larceny, and for not less than two years and not more than three years for the crime of malicious destruction of telephone lines, said sentences to run consecutively.

At the trial one of the State's witnesses, Danny Bogue, testified that on the evening of December 29, 1970, he and the defendant proceeded in the defendant's 1969 G. M.C. pickup to Creston Junction in Sweetwater County, Wyoming. They drove along a road next to telephone poles and the defendant, who was driving, stopped, put on climbing devices, climbed the poles and cut the telephone lines. The parties rolled up the wire and loaded it into defendant's pickup. At about 8 p. m., upon seeing headlights, the parties got back into the pickup and drove in the opposite direction from the oncoming headlights. They left the road and drove through grazing lands, and in attempting to get back on the roadway became stuck in deep snow in a ditch. They attempted to free the vehicle by jacking it up and placing the coils of wire under the wheels. However, their efforts were in vain, and after about 45 minutes they left the pickup and got a ride into Rawlins with a passing motorist. According to witness Bogue they then checked into a motel in Rawlins at about 9:30 p. m., and the defendant said that the next morning he would report the pickup stolen. Bogue further testified it was the defendant's idea to steal the wire and he was to receive $300 for his part in the theft. The climbing devices defendant used to climb the poles were found in the abandoned pickup and identified by the witness.

Both the defendant and witness, Danny Bogue, were originally charged in the same information but separation was ordered, the charges against witness Bogue were dismissed, and he was granted immunity for his testimony as a State's witness. The jury was fully advised of dismissal and immunity during direct and cross-examination of the witness.

The defendant's defense was that Bogue borrowed his pickup and was involved in the alleged theft with some person other than the defendant. He maintained during his testimony that he was in bed in the motel at the time of the crimes.

Mr. Lyle Wolfe, an employee of Mountain States, received notice at about 8 p. m. that there was some trouble with the telephone lines in the area of Creston Junction. He drove to the area and upon arrival observed a vehicle extinguish its headlights. He noticed that the tracks from the pickup had turned off the road, and, upon his return to the traveled portion of the highway, he observed a pickup truck stuck in the snow. He testified that 20 spans of copper wire were missing and he identified the wire found in the abandoned pickup of the defendant as the wire which

had been removed from the telephone poles.

Sheriff C. W. Ogburn of Carbon County, former Undersheriff Chris Willis of Carbon County, and Mr. Milton Poteet, Manager for Mountain States, arrived at the scene where the pickup was stuck in the snow at approximately 9:15 p. m. They observed the copper wire in and around the pickup.

E. L. Chapman, a Deputy Sheriff of Sweetwater County, Wyoming, testified that he weighed the copper wire found in and around the defendant's pickup. The 15 coils of copper wire weighed 1,550 pounds. In his official capacity he sold one coil of this copper wire to Rock Springs Hide and Fur for 35¢ a pound, and a check made payable to the Sweetwater County Sheriff's office was issued by that company for $30.80 representing 88 pounds of copper.

Harry Weiss, the owner of Rock Springs Hide and Fur, testified that he had bought and sold copper for 44 years. He identified the copper he purchased from Deputy Sheriff Chapman and testified he had paid 35¢ a pound for it.

The criminal complaint filed in the district court alleged that defendant on or about the 29th day of December 1970 did unlawfully

### "COUNT I

and feloniously steal, take and carry away the personal goods of Mountain States Telephone & Telegraph Company, a Colorado Corporation, having a value of $25.00 and upwards, to-wit: 15 coils of 165 guage [sic] copper telephone line having an approximate value of $821.50 as junk copper, contrary to Wyoming Statutes of 1957, Section 6–132.

### "COUNT II

Did unlawfully, feloniously and wilfully [sic] on December 29, 1970 in Sweetwater County, Wyoming displace, remove, injure, or destroy the telephone line belonging to Mountain States Telephone & Telegraph Company, a Colorado Corporation, contrary to Wyoming Statutes of 1957, as amended, Section 37–258.1."

The defendant in his appeal argued:

1. The trial court did not properly instruct as to the corroboration required for an accomplice's testimony in order to convict;

2. The court committed error by permitting Deputy Sheriff E. L. Chapman and others to testify as to the value of the wire; and

3. The court erred as a matter of law in charging two separate substantive offenses out of one criminal action.

Counsel for defendant argued before the trial court that it had an obligation of instructing the jury that there must be corroborating evidence to an accomplice's testimony in order to convict. In his brief the defendant argued that the "test for corroboration of an accomplice is more than what the Court indicated and the cautionary instruction suggesting that they view the accomplice's testimony with distrust is not sufficient as a matter of law."

As we said in Filbert v. State, Wyo., 436 P.2d 959 at 960, we have no statute which requires that an accomplice's testimony be corroborated, and we have not held that a conviction may not be had solely upon the uncorroborated testimony of an accomplice. The defendant cited no authority nor made any argument that we should modify or change our stand. As the trial court pointed out during argument concerning the instructions, there was sufficient inculpatory evidence tending to connect the defendant with the two offenses and, further, that no instruction was offered by the defense to improve upon the tendered instruction. The trial court thereupon instructed the jury as follows:

"You are instructed that an 'accomplice' is one who freely and voluntarily engages with another in the commission of a crime.

"It is the law that the testimony of an accomplice ought to be viewed with dis-

truct. This does not mean that you may arbitrarily disregard such testimony, but you should give to it the weight to which you find it to be entitled after examining it with care and caution and in the light of all the evidence in the case.

"In giving this instruction I do not intend to imply any opinion of my own as to the credibility of any witness."

The defense made no specific showing as to why this instruction was prejudicial in that it improperly or inadequately stated the law, and we are aware of no prejudicial error.

Defendant argued that neither of the witnesses who testified as to the value of the copper wire was qualified, and therefore their opinions should not have been received in evidence.

A Sweetwater County deputy sheriff sold one of the coils of wire taken from the telephone lines to the Rock Springs Hide and Fur. He testified the wire weighed 88 pounds and he received $30.80 for it. Harry Weiss, the proprietor of Rock Springs Hide and Fur, testified without objection that he purchased the copper wire from the deputy and paid 35¢ per pound—or $30.80—which was what the copper was worth, and this was the price being paid to the general public. He also testified that he personally had been engaged in the business of buying and selling metals for 44 years.

■ Where no objection was made to this testimony the defendant cannot now be heard to complain. We note, however, that witness Weiss was competent to testify as to the value of the wire, and this constituted sufficient evidence of the value of the property to be submitted to the jury. State v. Parker, 44 Wyo. 478, 13 P.2d 641, 642.

The witness, Deputy Sheriff Chapman, did not testify as to value. His testimony was only that he sold the copper wire to Rock Springs Hide and Fur. The argument then as to his testimony has no merit.

The defendant argued that if more than one criminal offense arises from the same transaction inspired by the same criminal intent which is the essential element of each offense, the offenses merge and the defendant is subject to only one punishment. He contended that in the instant matter the removal of telephone lines is identical to the asportation element of larceny and the two offenses merged.

■ We think the defendant is correct in this contention in that the malicious destruction violation was an included offense in the larceny charge. It was charged that the defendant did in the larceny count " * * * steal, take and carry away * * * telephone line," and in the malicious destruction count " * * * displace, remove, injure, or destroy the telephone line * * *."

The defendant cited State v. Tobin, 31 Wyo. 355, 226 P. 681, wherein the defendant was convicted of gambling and permitting gambling. We said the "permitting" in such case was necessarily embraced in the act of "conducting and carrying on" and was merged in the latter, and hence there should have been imposed upon the defendant only one sentence.

In argument of his motion before the trial court the defendant referred to Waller v. Florida, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435, reh. den. 398 U.S. 914, 90 S.Ct. 1684, 26 L.Ed.2d 79. We are aware of that case as well as the case of Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469, both of which recent cases are concerned with certain aspects of the double jeopardy question. While the facts in the *Waller* case are very similar to those in this case, the issues in neither of those cases are pertinent here. While the decision in *Tobin,* supra, cited herein as authority for our holding this day, was handed down in 1924, the principles stated therein are still valid. In 24 C.J.S. Criminal Law § 1567(5) at 434–437, it is stated:

"If the several counts of the indictment on which accused stands convicted in ef-

fect charge only one offense, or charge in different ways the commission of the same offense, or charge the commission of different crimes or degrees of crime which, by reason of the fact that they are of the same character and grow out of the same transaction, are in effect parts or aspects of one offense, or where the crime charged in one count necessarily embraces or includes the crime charged in another count, or is merged in, the crime charged in another, it is erroneous for the court, on a finding of a general verdict or plea of guilty, to impose separate penalties for the several counts, whether by way of separate sentences to run successively, or a single gross sentence lumping the several penalties. In such case accused is subject only to a single penalty on all the counts constituting one entire offense, but there are several accepted ways in which the single penalty may be imposed, and there is some difference of opinion as to which is the more acceptable way.

"If the several counts of the indictment or information will permit the imposition of only one sentence, the court may impose sentence on that count which charges the highest grade or degree of the offense involved, or which embraces the offenses charged in the other counts, * * *"

The test to determine if there was a merger or an included offense has been expressed several ways in many cases. One definition frequently used is that one offense is necessarily included in another if it is impossible to commit the greater without also having committed the lesser. In this case it is apparent that the larceny of the "telephone line" could not have been committed without also committing malicious destruction of the "telephone line," and thus the defendant should have been sentenced for only one offense. The trial court should therefor modify the judgment to strike the conviction and sentence for the malicious destruction of the telephone line, leaving standing the conviction and sentence for larceny.

Affirmed as modified.