STATE OF NORTH CAROLINA v. DAVID E. SEAGROVES

No. 858SC60

(Filed 3 December 1985)

1. **Criminal Law §§ 92.5, 128.2— procuring drugs for inmate—motion for severance denied—motion for mistrial following codefendant's guilty plea in mid-trial denied—no error**

   The trial court did not err in a prosecution for conspiracy to procure drugs for an inmate and procuring drugs for an inmate by denying defendant's motion to sever his trial from the codefendant's or by denying defendant's motion for a mistrial after the codefendant entered a guilty plea during trial. Most of the evidence at trial pertained to defendant's involvement in the transaction or to the surrounding circumstances rather than to criminal activities of the codefendant in which defendant was not involved; defendant did not show how he was prejudiced by any extraneous evidence; and no prejudice was shown to defendant from the codefendant's guilty plea and departure from the courtroom midway through the trial. N.C.G.S. 15A-1061 (1983).

2. **Narcotics § 4.5— procuring drugs for inmate—instructions—no plain error**

   There was no plain error in the jury instructions in a prosecution for conspiracy to provide drugs to an inmate and procuring drugs for an inmate.

3. **Criminal Law § 138— procuring drugs for inmate—mitigating factor of duress not found—no error**

   The trial court did not err in a prosecution for conspiracy to provide drugs to an inmate and procuring drugs for an inmate by refusing to find in mitigation that defendant acted under duress and that he was a passive participant in the transaction where defendant's counsel merely stated that defendant acted under compulsion and that he was a passive participant. N.C.G.S. 15A-1340(4)(a)(2)(b), (c) (1983).

4. **Constitutional Law § 48— effective assistance of counsel—cross-examination**

   Defendant was not denied effective assistance of counsel in a prosecution for conspiracy to provide drugs to an inmate and procuring drugs for an inmate on the grounds that his counsel failed to adequately cross-examine a guard about a prior inconsistent statement and failed to request certain jury instructions. Defendant's counsel established the fact of the prior inconsistent statement through his cross-examination, a failure to further cross-examine the guard on this point did not amount to a failure to function as counsel, and, there being no plain error in the jury instructions, defendant's assertion of ineffective assistance of counsel with respect thereto must also fail.

5. **Constitutional Law § 34— convictions for conspiracy to provide drugs for an inmate and procuring drugs for an inmate—double jeopardy**

   Defendant was convicted of conspiracy to provide drugs to an inmate and of procuring drugs for an inmate in violation of the constitutional guarantee against double jeopardy where defendant's participation in the transaction was asking a guard if he would be interested in making easy money; later

repeating this inquiry and, along with the codefendant, telling the guard where to pick up marijuana; and, after the first pickup was not successful, handing the guard a slip of paper containing the telephone number of the codefendant's wife and a time to call. N.C.G.S. 14-258.1(a) (1981).

APPEAL by defendant from *Bruce, Judge*. Judgment entered 23 August 1984 in Superior Court, GREENE County. Heard in the Court of Appeals 18 September 1985.

*Attorney General Thornburg, by Associate Attorney General Barbara P. Riley for the State.*

*Horton and Crutchfield, by Karen M. Crutchfield, and Morgan, Bryan, Jones & Johnson, by Ed Turlington, for defendant appellant.*

BECTON, Judge.

I

Defendant was convicted of conspiring to provide drugs to an inmate in violation of N.C. Gen. Stat. Sec. 14-258.1(a) (1981), and of procuring drugs for an inmate in violation of the same statute. He received concurrent seven year sentences for these convictions. Defendant appeals, arguing that: (1) it was error to deny his motion for severance; (2) it was error to deny his motion for a mistrial; (3) plain error was committed in the jury instructions; (4) it was error to fail to find two statutory mitigating factors; (5) defendant was denied effective assistance of counsel; and (6) defendant's conviction and sentencing constitute double jeopardy. We find merit only in the argument concerning double jeopardy.

II

Defendant and his co-defendant were inmates at Eastern Correctional Center in Maury, North Carolina, at the time of the incidents in question. The State's principal witness was a prison guard, who testified, pursuant to an agreement with the State, as follows. On 1 November 1983, the defendant approached him and asked if he would be interested in making some easy money. The guard said he would have to think about it. On 15 November 1983, the guard was again approached by the defendant who asked the guard if he had thought about what they had discussed the other day. The guard answered, "Yes." The co-defendant then joined

the conversation. The defendant and the co-defendant asked the guard if he would be willing to pick up three ounces of marijuana at a specified pick-up point in Newton Grove, for which the guard would receive one hundred dollars.

The next meeting among the defendant, the co-defendant, and the guard occurred on 20 November 1983 in the prison unit. The defendant asked the guard if he had picked up the marijuana. The guard responded that the marijuana was not at the designated point, whereupon the co-defendant stated that Betty Jean, his wife, had picked it up. The defendant then gave the guard a piece of paper with three things written on it: the name of "Betty Jean," a phone number, and a time to call (before 8:30 a.m.). The co-defendant told the guard to call the number and that Betty Jean would meet the guard. The guard told the defendant and the co-defendant that he would bring in the marijuana on his next day off. They told him to put it under the pool table in the recreation room.

The guard called Betty Jean on Saturday morning, 26 November 1983. They met at MacDonald's in Mt. Olive, and Betty Jean gave the guard the marijuana. The guard took part of the marijuana to the prison on Monday, 28 November 1983. Without saying anything to the defendant or the co-defendant, he hid the marijuana under the pool table. After getting off work on Tuesday night, 29 November 1983, the guard checked to see if the marijuana was still under the table. It was. The guard removed it (apparently having second thoughts about the whole transaction) and put it in his back pocket. As he walked to the front of the prison he was stopped by a number of his superiors and searched. His superiors found the marijuana on him.

The defendant did not put on any evidence.

### III

[1] Defendant first argues that it was reversible error to deny his pre-trial motion for severance of his trial from the co-defendant's, as joinder deprived him of a fair trial. The general rule is that a motion for separate trials is in the sound discretion of the trial judge, and absent a showing that the joint trial deprived defendant of a fair trial, the lower court's ruling will not be disturbed on appeal. *State v. Slade*, 291 N.C. 275, 229 S.E. 2d 921

(1976). Defendant complains that he was prejudiced by joinder because evidence was admitted concerning criminal activities of the co-defendant in which defendant was not involved. Our review of the record discloses that most of the evidence at trial pertained to defendant's involvement in the transaction or to the surrounding circumstances. Furthermore, defendant does not show how he was prejudiced by any extraneous evidence that may have been admitted.

Defendant further asserts that joinder was an abuse of discretion because midway through the trial the court accepted the co-defendant's guilty plea, and the co-defendant departed from the courtroom. Defendant contends that the jury could only infer from the "disappearance" of the co-defendant that the defendant was guilty. We do not agree. The transcript shows that the decision to accept the guilty plea and the plea itself were all conducted outside the presence of the jury. When the jury was called back, they were told by the trial court that they were no longer required to resolve the issues as to the co-defendant and that this development was not to affect their decisions in defendant's case. Again, no prejudice to defendant is shown. This assignment of error is overruled.

## IV

In a related argument, defendant contends that reversible error was committed because the trial court refused to grant defendant's motion for a mistrial when the co-defendant entered a guilty plea during the trial. A trial judge may declare a mistrial if an occurrence during the trial results in "substantial and irreparable prejudice to the defendant's case." N.C. Gen. Stat. Sec. 15A-1061 (1983). Defendant contends that the departure of the co-defendant during trial was such an occurrence. A ruling on a motion for a mistrial is not reviewable absent a showing of gross abuse of discretion. *State v. Daye*, 281 N.C. 592, 189 S.E. 2d 481 (1972). For the reasons stated in Part III, *supra*, this ruling was not error.

## V

[2]  The defendant next asserts that the jury instructions were deficient in several respects that amounted to plain error. The "plain error" doctrine is an exception to the requirement that a

party must object to the charge before the jury retires. *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983). In applying this rule, appellate courts are to "examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilty." *Id.* at 661, 300 S.E. 2d at 379 (citation omitted). We have examined the entire record, and we find no such impact here.

## VI

[3]  The defendant also contends that the trial court committed reversible error in refusing to find in mitigation that he acted under duress and that he was a passive participant in the transaction. N.C. Gen. Stat. Sec. 15A-1340.4(a)(2)(b), (c) (1983). The sentencing judge is required to find in mitigation any factor proved by uncontradicted, manifestly credible evidence. *State v. Jones*, 64 N.C. App. 505, 307 S.E. 2d 823 (1983). Defendant's contention that he presented such evidence of the two factors in question at the sentencing hearing is incorrect. Defendant's counsel merely stated that defendant acted under compulsion and that he was a passive participant. Such statements do not constitute substantive evidence. Furthermore, a review of the entire record does not disclose either that defendant acted under compulsion or that he played a passive role.

## VII

[4]  Defendant next contends that his conviction was obtained in violation of his sixth amendment right to effective assistance of counsel. The two-part test for the review of assertions of ineffective assistance of counsel is as follows:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made error so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's error were [sic] so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*State v. Braswell*, 312 N.C. 553, 562, 324 S.E. 2d 241, 248 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, ---, 80 L.Ed. 2d 674, 693, 104 S.Ct. 2052, 2064 (1984) ).

Defendant first asserts as error that counsel did not adequately cross-examine the guard regarding the guard's prior inconsistent statement. The record shows that defendant's counsel established the fact of the prior inconsistent statement through his cross-examination. Even assuming, *arguendo*, that counsel should have cross-examined the guard further on this point, we cannot say a failure to do so amounted to a failure to "function" as counsel.

Defendant also asserts that he was denied effective assistance of counsel in that his attorney failed to request certain jury instructions. In Part IV, *supra*, we found no plain error in the judge's charge to the jury. There being no "plain error" in the jury instructions, defendant's assertion of ineffective assistance of counsel with respect thereto must also fail.

## VIII

[5]   Defendant contends that his convictions were in violation of the constitutional guaranty against double jeopardy because the same evidence supported his convictions for both offenses. *See State v. Irick*, 291 N.C. 480, 502-03, 231 S.E. 2d 833, 847 (1977) ("same evidence" test for double jeopardy). In this assignment of error, we find merit.

Defendant was convicted under N.C. Gen. Stat. Sec. 14-258.1(a) (1981) of conspiring to provide drugs to an inmate and of procuring drugs for an inmate. The pertinent portion of G.S. Sec. 14-258.1(a) reads as follows:

> If any person shall give or sell to any inmate of any charitable, mental or penal institution, or local confinement facility, or if any person shall combine, confederate, conspire, aid, abet, solicit, urge, investigate, counsel, advise, encourage, attempt to procure, or procure another or others to give or sell to any inmate of any charitable, mental or penal institution, or local confinement facility, any deadly weapon, or any cartridge or ammunition for firearms of any kind, or any controlled substances . . . he shall be punished as a Class H felon . . . .

This statute delineates two categories of offenses for which an individual might be found guilty: (1) the substantive offense of "giving or selling" or (2) a group of thirteen related acts that

depict involvement with, but fall short of the commission of, the substantive offense; namely, combining, confederating, conspiring, aiding, abetting, soliciting, urging, investigating [instigating?], counseling, advising, encouraging, attempting to procure, or procuring another to commit the offense of giving or selling. In this case, both convictions were obtained under the second category of proscribed acts.

The inquiry naturally arises whether in that second category of proscribed acts, the legislature intended to create thirteen separate criminal offenses, each punishable as a Class H felony. In answering this question, we find an examination of *State v. Sanderson*, 60 N.C. App. 604, 300 S.E. 2d 9, *disc. rev. denied*, 308 N.C. 679, 304 S.E. 2d 759 (1983), helpful. In *Sanderson*, this Court construed current N.C. Gen. Stat. Sec. 90-95(h)(1) (Supp. 1983) as allowing separate convictions for selling, manufacturing, delivering, transporting or possessing in excess of 50 pounds of marijuana. We find *Sanderson* distinguishable. In *Sanderson*, the proscribed activities are physically and conceptually distinct, while in the instant case the proscribed activities are merely gradations and variances of a single act. Interestingly, the result in *Sanderson* was reached "reluctantly," the Court stating that it was bound by a holding in an earlier case. We would be even more reluctant here than in *Sanderson* to hold that the second category of G.S. Sec. 14-258.1(a) created thirteen separate criminal offenses.

Analyzing the legislative history of G.S. Sec. 14-258.1(a) further supports our result. If, as here, the defendant could be separately convicted of "conspiring" and "procuring" to give drugs, then, by extension, a defendant could receive a separate felony conviction for each of the thirteen enumerated acts in the second category of the statute. We are of the opinion that the legislature did not intend such a result.

> The primary function of a court in construing a statute is to ascertain the intent of the legislature . . . . In ascertaining this intent, a court looks to the language and spirit of the statute and what it sought to accomplish. . . . It is also relevant to look to the history of the legislation and the circumstances surrounding its enactment.

*State v. Ferrell*, 300 N.C. 157, 160-61, 265 S.E. 2d 210, 212 (1980) (citations omitted); *see also State v. Fulcher*, 294 N.C. 503, 520,

243 S.E. 2d 338, 350 (1978) (as aid in ascertaining intent of legislature, courts must take into account law prior to enactment of statute). Courts are to presume the legislature acted with reason and common sense and that it did not intend an unjust or an absurd result. *Smith's Cycles, Inc. v. Alexander*, 27 N.C. App. 382, 219 S.E. 2d 282 (1975).

Looking at the history of current G.S. Sec. 14-258.1, we find that from the passage of Public Law c. 1, sec. 52 in 1899, until 1961, the selling or giving of "narcotics" to an inmate was punishable as a misdemeanor. In 1961, N.C. Gen. Stat. Sec. 14-390 (1953) was amended to include language similar to the second category of offenses in current G.S. Sec. 14-258.1. 1961 N.C. Sess. Laws 394. As amended, the statute still punished the giving or selling of barbiturates or stimulant drugs as a misdemeanor, but a new section made the giving or selling of narcotics, and the offenses ancillary to the giving or selling of narcotics, a felony punishable by up to ten years in prison. However, by 1973 there was no longer a misdemeanor offense — that is, both the giving or selling of a controlled substance to an inmate and any lesser participation therein were generally punishable as felonies with a maximum penalty of ten years imprisonment. 1973 N.C. Sess. Laws 1093; *see also* 1971 N.C. Sess. Laws 919, 929.

This history reveals a growing concern with drug use among North Carolina inmates, which concern has resulted in an effort to deal with those involved in supplying drugs. Although originally giving or selling drugs was a misdemeanor, today all offenses included in G.S. Sec. 14-258.1 are Class H felonies. Thus, statutory coverage has been enlarged, and the penalties for the specified offenses have become more severe. Nothing in the 1961 amendment suggests that the legislature intended to punish the giving or selling of barbiturates or stimulants to an inmate as a misdemeanor, and to impose a maximum prison term of ten years for the giving or selling of narcotics, and still have ancillary offenses involving a narcotic result in separate and multiple sentences. Similarly, nothing in the current statute, which continues to punish both the substantive crime of giving or selling controlled substances and, alternatively, involvement with or participation in the transaction, suggests the legislature intended to prescribe alternate punishment for thirteen separate criminal offenses. We do not presume the legislature intended the unreasonable or unjust re-

sult of potentially imposing a punishment of 130 years in prison for any involvement with giving or selling controlled substances to an inmate short of committed the substantive offense, while the actual giving or selling could only result in a maximum sentence of ten years.

Finally, an application of the "same evidence" test invoked by the defendant demonstrates that his convictions were in violation of double jeopardy. In this connection, the case of *State v. Summrell*, 282 N.C. 157, 192 S.E. 2d 569 (1972) is instructive. In that case, the defendant was charged with resisting arrest and assault upon a police officer. Our Supreme Court observed that although the trial judge was not required to make the State elect between charges at the beginning of the trial, after the evidence was presented, "it had become quite clear that no line of demarcation between defendant's resistance of arrest and his assaults upon the officer could be drawn." *Id.* at 173, 192 S.E. 2d at 579. That Court further noted that the warrants themselves indicated duplicate charges, each specifying "only acts of violence which defendant directed at the officer's person while he was attempting to hold defendant in custody." *Id.* The Court concluded that, as the defendant had been twice convicted and sentenced for the same criminal offense, the constitutional guaranty against double jeopardy had been violated.

In the instant case, the evidence adduced at trial indicated that defendant's participation in the transaction was asking the guard if he would be interested in making easy money; later repeating this inquiry, and then, along with the co-defendant, telling the guard where to pick up marijuana; and on a third occasion, after the co-defendant had informed the guard the pick-up was not successful because the co-defendant's wife, Betty Jean, had already picked up the drugs, handing the guard a slip of paper containing Betty Jean's telephone number and a time to call. As in *Summrell*, we can make no meaningful distinction, draw no "line of demarcation," between the evidence used to convict defendant of conspiracy and the evidence used to convict the defendant of procuring drugs. Also in our case, analogous to *Summrell*, the indictment itself indicated duplicate charges, the first count charging the defendant with conspiring, combining and confederating with the guard, co-defendant, and Betty Jean to give the co-defendant drugs, and the second count charging him with

aiding, abetting, soliciting, urging, counseling, advising, encouraging and procuring the guard and Betty Jean to give the co-defendant drugs.

Defendant has been convicted twice and sentenced twice for the same offense. The principle of double jeopardy protects against multiple punishments for the same offense. *Sanderson*, 60 N.C. App. at 608, 300 S.E. 2d at 14. Thus, both convictions may not stand, and judgment must be arrested upon one of them. *See Summrell* (fact that concurrent, identical sentences imposed in each case makes duplication of conviction and punishment no less a violation of defendant's constitutional right not to be put in jeopardy twice for same offense). And when, as here, the two offenses are of equal severity, this Court has held "for the sake of consistency . . . the sentence which appears later on the docket, or is second of two counts of a single indictment, or is the second of two indictments, will be stricken." *State v. Pagon*, 64 N.C. App. 295, 299, 307 S.E. 2d 381, 384 (1983).

## IX

Therefore, as to defendant's conviction on the first count of the indictment for conspiring to provide drugs to an inmate, we find no error; as to his conviction on the second count for procuring drugs for an inmate, the conviction is vacated and judgment arrested.

Affirmed in part and reversed in part.

Judges WEBB and MARTIN concur.