The STATE of Wyoming, Plaintiff,

v.

Robert CARTER, Defendant.

No. 85–159.

Supreme Court of Wyoming.

Feb. 28, 1986.

A.G. McClintock, Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen. and Suzanne H. Lewis, Sp. Asst. Atty. Gen., for plaintiff.

George L. Zimmers, Laramie, for defendant.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

This matter comes before us on a bill of exceptions filed by the State. The county court erred when it dismissed Count II of the complaint on the ground that it merged with another count, and we therefore sustain the exceptions raised.

On February 28, 1985, a complaint charging Robert Carter (defendant) with delivery of a controlled substance (marijuana) and possession with intent to deliver a controlled substance (hash oil) was filed in the county court of Albany County, Wyoming. Evidence presented at the preliminary hearing showed that on February 26, 1985, defendant attempted to sell a bag of marijuana and a quantity of hash oil to another individual. The marijuana sale was completed, but at the time of his arrest, only a few moments later, defendant still had in his possession six vials of hash oil.

At the close of the evidence at the preliminary hearing, defendant moved to dismiss the second count of the complaint, possession with intent to deliver, on the ground that it merged into the first count. The parties submitted briefs on the question. After a hearing on the motion, the county court found that Count II did indeed merge into Count I and, therefore, dismissed Count II. Defendant was ordered to appear before the district court for arraignment as to Count I.

Pursuant to §§ 7–12–102 and 7–12–103, W.S.1977, 1985 Cum.Supp., and § 7–12–104, W.S.1977, the State then notified the county court that it intended to file an application for permission to file a bill of exceptions. The county court properly certified the application, and the application was filed in this Court. Concluding that the questions presented should be heard and decided, we granted the State's application.

In its bill of exceptions, the State raises the following issue:

" * * * [W]hether the County Court was in error when it ruled that Count II of the Criminal Complaint was merged in Count I, and dismissed Count II."

In its brief in support of the bill of exceptions, however, the State restates the issue as follows:

"Whether the charge of 'possession of a controlled substance with intent to deliver' is merged into a charge of 'delivery of a controlled substance,' where the substance delivered and the substance attempted to be delivered (and therefore possessed with intent to deliver) were different controlled substances."

Having concluded that there are two separate and distinct issues before us, we will address them both accordingly.

As a preliminary matter, we must decide whether it was within the county court's authority to dismiss Count II of the complaint on the ground that it merged with Count I. Rule 7(b), W.R.Cr.P., provides in relevant part:

"If from the evidence it appears that there is probable cause to believe that an offense has been committed and that the defendant committed it, the commissioner *shall* forthwith hold him to answer in district court. * * * " (Emphasis added.)

In reliance upon that rule, this Court and others have said that the sole purpose of a preliminary hearing is to determine whether there is probable cause for detaining the accused pending further proceedings. *Haight v. State*, Wyo., 654 P.2d 1232 (1982); *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). We have also said that, under Rule 7(b), W.R.Cr.P., probable cause exists if the proof is sufficient to cause a person of ordinary caution or prudence to conscientiously entertain a reasonable belief that a public offense has been committed in which the accused participated. *Wilson v. State*, Wyo., 655 P.2d 1246 (1982).

■ As indicated above, in the present case the court had before it evidence that defendant sold a bag of marijuana and that he unsuccessfully attempted to sell a quantity of hash oil. The evidence also showed that, at the time of his arrest, defendant was in possession of six vials of hash oil. Based on this evidence, it was the county court's function to determine whether or not there existed probable cause to believe the crimes charged had been committed and that the accused had committed them. The record reflects that the evidence was entirely sufficient to enable the court to entertain a reasonable belief that the accused committed the offenses charged and to bind him over on both counts. Thereafter, pursuant to Rule 16(b)(2), W.R.Cr.P.,[1] defendant could have raised his motion to dismiss before the district court.

■ Other courts have held, and we agree, that at the preliminary hearing the judicial officer should not attempt or be called upon to decide difficult legal questions. 21 Am.Jur.2d, Criminal Law § 428 (1981). It simply is not contemplated that the committing magistrate should ask for and receive briefs on disputed legal points. *State ex rel. Berger v. Jennings*, 110 Ariz. 441, 520 P.2d 313 (1974).

---

1. Rule 16(b)(2), W.R.Cr.P., reads in relevant part:

"(b) *Motion raising defenses and objections.*
* * * * * *

"(2) Defenses and Objections Which Must Be Raised.—Defenses and objections based on defects in the institution of the prosecution or in the indictment or information * * * may be raised only by motion before trial. * * * "

The development of these principles is due in part to the summary nature of the preliminary hearing. It is held promptly after arrest. Neither side has much time to prepare. The prosecution presents only so much of its case as is necessary to establish probable cause, reserving the remainder for trial. The accused may very well offer no evidence unless he can demonstrate the absence of probable cause. Just as the preliminary hearing is an inappropriate forum for deciding the important issues involved in a motion to suppress, 2 LaFave & Israel, Criminal Procedure § 14.4 (1984), so too is it an inappropriate forum for deciding other complicated legal questions. The preliminary hearing is designed to be a quick, efficient means of determining whether the accused should be detained and of ensuring the effective administration of justice. For these reasons, we hold that it was not within the authority of the county court to decide defendant's motion to dismiss Count II.

Having found that the county court erred in addressing defendant's motion to dismiss, we might ordinarily decline to address the question of whether the charges filed against defendant did in fact merge. However, where questions are involved which are bound to arise again, it is proper for us to decide them. *Belle Fourche Pipeline Company v. Elmore Livestock Company*, Wyo., 669 P.2d 505 (1983).

The majority of courts have apparently adopted the position that:

" * * * [I]t is not duplicitous to charge possession with intent to distribute together with distribution in one count since [the statute] sets forth several ways in which the statute may be violated, including both distribution and possession with intent to distribute. * * * " *United States v. Orzechowski*, 547 F.2d 978, 986–987 (7th Cir.), *cert. denied* 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977).

Section 35–7–1031(a), W.S.1977, 1985 Cum. Supp., provides in part as follows:

"Except as authorized by this act, it is unlawful for any person to *manufacture, deliver, or possess with intent to manufacture or deliver*, a controlled substance. * * * " (Emphasis added.) This language clearly sets forth several ways in which the statute may be violated, including manufacture, delivery or possession with intent to manufacture or deliver. Therefore, under the majority rule, it is not duplicitous to charge possession with intent to deliver together with delivery.

It is also generally recognized that the crime of possession of a controlled substance becomes merged with the crime of sale only when the sale is of the possessed controlled substance. *State v. Hagan*, 3 Kan.App.2d 558, 598 P.2d 550 (1979). That is, where evidence of the sale of a controlled substance is the only evidence to support a possession charge, the offense of possession with intent to distribute and actual distribution of the same substance have merged into a single offense. *United States v. Carcaise*, 763 F.2d 1328 (11th Cir.1985). However, where there is separate evidence of the two offenses, the offenses cannot be said to have merged.

Cases decided by this Court are in complete accord with the principles enunciated above. In *Jackson v. State*, Wyo., 522 P.2d 1356, *cert. denied* 419 U.S. 1055, 95 S.Ct. 637, 42 L.Ed.2d 652 (1974), as in the present case, the defendant was charged with delivery of a controlled substance and possession with intent to deliver a controlled substance. The record reflected that the defendant sold two grams of cocaine and retained possession of eight grams of cocaine. We held that, with respect to the two grams he sold, the defendant could not be charged with both possession with intent to deliver and delivery. Where the accused sells the same substance he is charged with possessing, clearly the two offenses must be said to have merged. This proposition finds additional support in *Boyd v. State*, Wyo., 528 P.2d 287 (1974), *cert. denied* 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102 (1975). However, where a designated portion of a controlled

substance is sold and the rest remains in the defendant's possession, both offenses of possession with intent to deliver and delivery may be charged. *Howard v. State*, 144 Ga.App. 208, 240 S.E.2d 908 (1977). This conclusion is not controverted by *Jackson v. State* as defendant here contends. In *Jackson*, with respect to the eight grams remaining in the defendant's possession, we held only that there was not sufficient evidence as to the nature of the substance for the jury to find him guilty of possession of a controlled substance with intent to deliver. Had there been sufficient evidence that the substance was cocaine, it is clear that both the delivery charge and the possession charge would have been upheld.

For all of the reasons stated above, the State's bill of exceptions to the county court's dismissal of Count II of the complaint is sustained.

URBIGKIT, J., files a dissenting opinion in which CARDINE, J., joins.

URBIGKIT, Justice, dissenting, with whom CARDINE, Justice, joins.

I would respectfully dissent from the majority decision on the basis of a differing opinion in regard to the authority of the county court, and, additionally, by a conclusion that the majority may have improvidently adopted a rule which is contrary to the existing law in Wyoming for determination as to whether a merger occurs when concurrent criminal charges are included in the simultaneous prosecution. The significance of the broad issues raised justifies an extended consideration by this court.

A more detailed statement of the facts would be helpful to accommodate this dissent.

The defendant, Robert Carter, was under surveillance by virtue of his use of a CB radio for general solicitation to sell some "smoking dope." Carter was a truck driver, driving a semi truck on an interstate route near Laramie, Wyoming.

The arresting officer, a highway patrolman armed with a CB radio, followed Carter, the seller, and the prospective buyer, who was also driving a long-haul truck, to a location of rendezvous at a rest stop located a few miles from the outskirts of Laramie. It was night.

The officer, lights off, also pulled into the rest stop and was able to see the door of the front truck open and then close. The officer called for backup, turned on his lights, and drove up to the second truck, where he found the driver, as the apparent buyer, a third person, and the defendant, all in the cab seat. Arrest was made, and marijuana was found in the back of the cab, as was hash oil in the defendant's possession.

Carter was charged with delivery and possession with intent to deliver, as arising from the occurrence. At the preliminary hearing, he moved to dismiss the second charge, on the basis of merger of the criminal offenses. The case was argued and briefed in the county court, on the premise of the prosecuting attorney that the duality of the offenses was created by the involvement of both marijuana as a solid substance and hash oil as an extractive derivative.

### I

In this case, as in the usual controlled-substance case, we are faced with the prosecutor's proclivity for charging the disjunctive elements of the controlled-substance statute, either conjunctively in one count (duplicity), or by cumulative charge of individual elements of the statute in separate counts (multiplicity).[1] 1 Wright, Federal Practice and Procedure: Criminal 2d § 142, p. 469 (1982).

Involved in the decision are the criminal rule of merger and the countervailing rule of duplicity, both of which arise from con-

---

1. Section 35–7–1031(a), W.S.1977, 1985 Cum. Supp., reads:

"(a) Except as authorized by this act, it is unlawful for any person to manufacture, de-liver, or possess with intent to manufacture or deliver, a controlled substance. * * *"

stitutional questions of double jeopardy. If there is merger, there will not be duplicity if conjunctively charged. If merger does not occur, then the duplicity rule requires that separate counts are necessary to avoid double jeopardy. *United States v. Orzechowski*, 547 F.2d 978 (7th Cir.1976), *cert. denied* 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977).

The fundamental principle which stands without conflict is the question whether the criminal charges are to be prosecuted in a way that the result is not violative of double jeopardy. More practically speaking, the issue invokes ascertainment of the rule for determination if merger in the specific case occurs by the separate count charge of the different elements in the controlled-substance statute, as usually encompassing delivery and possession with intent to deliver.

Two well-defined rules have developed as a result of the general principle as first defined in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), a drug case. Those two tests are called the "transaction" rule and the "different evidence" rule, *United States v. Orzechowski*, supra. This second rule is otherwise designated as the "separate evidence" or the "same evidence" test in some cases, but no substantive difference can be discerned.

The transaction rule would require merger and avoid duplicity if the separately claimed crimes grow out of the same transaction. The different-evidence rule questions whether the statute prosecuting the conduct requires "proof of different facts,"

*United States v. Orzechowski*, supra, 547 F.2d at 986, as elements in each of the separately charged offenses. See extended discussion of the rules and hybrid versions in Comment, *Twice in Jeopardy*, 75 Yale L.Rev. 262 (1965).[2] See also Thomas, *Multiple Punishments for the Same Offense: The Analysis After Missouri v. Hunter or Don Quixote, the Sargasso Sea and the Gordean Knot*, 62 Wash.U.L.Q. 75 (1984); and Comment, *Double Jeopardy, Multiple Prosecution, and Multiple Punishment: A Comparative Analysis*, 50 Calif.L.Rev. 853 (1962).

The majority opinion in this case adopts the different-evidence rule for decision:

> "However, where there is separate evidence of the two offenses, the offenses cannot be said to have merged."

This rule has no support in prior Wyoming precedent, wherein the transaction rule has specifically been denominated since first stated by Justice Blume in *State v. Tobin*, 31 Wyo. 355, 226 P. 681 (1924).

The subsequent cases, totaling six in number, include three which are forcefully cited by both plaintiff and defendant, and also approved by the majority opinion. Actually, that sequence is of four cases which are then augmented by two other cases rendered since *Tobin*, with one as a multiple-charge drug case and another not.

Not coincidentally, in all seven cases, the multiple charge was rejected by the court, and the lower court reversed in that regard *in each case*. Consequently, it may be fair to say in this case that the citation of those cases is at best obiter dictum.

---

**2.** An interesting application of the same-evidence test is found in the North Carolina case of *State v. Seagroves*, N.C.App., 336 S.E.2d 684 (1985), where the offenses charged were conspiracy to provide drugs to a penitentiary inmate and procuring drugs for an inmate, as separate charges. The dual conviction was reversed by the court in looking to the history of the statute which otherwise could have created "thirteen separate criminal offenses" with a potential punishment

> " * * * of 130 years in prison for any involvement with giving or selling controlled substances to an inmate short of committing the substantive offense, while the actual giving or

selling could only result in a maximum sentence of ten years." 336 S.E.2d at 689.

The Sargasso Sea of metaphors of *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981); *Hunter v. State*, Del., 430 A.2d 476 n. 2, *cert. denied* 454 U.S. 971, 102 S.Ct. 519, 70 L.Ed.2d 390 (1981); and *State v. Haggard*, Mo., 619 S.W.2d 44 (1981), is indeed invoked by the infinitely derived minute differentiations of multiplicity attempted prosecutions.

The number of Supreme Court decisions since Blockburger which consider these double-jeopardy questions is extended, complex and conflicting.

The four-case sequence, to be discussed in reverse chronology, are *Jerskey v. State,* Wyo., 546 P.2d 173 (1976); *Boyd v. State,* Wyo., 528 P.2d 287, *cert. denied* 423 U.S. 871, 96 S.Ct. 137, 46 L.Ed.2d 102 (1974); *Jackson v. State,* Wyo., 522 P.2d 1286 (1974); and *Dorador v. State,* Wyo., 520 P.2d 230 (1974).[3]

In *Jerskey,* Justice Rose, in considering the double-jeopardy issue where the defendant was charged with attempting to possess with intent to deliver and intent to deliver, and, in reversing the dual conviction under the transaction rule, quoted from the prior Wyoming case of *Jackson,* stated:

" * * * For us now to hold that the
" 'offenses grew out of two *different* transactions'

"and were *not* connected together and did *not* constitute a common scheme or plan, in order to attempt to justify two convictions, would be just as incongruous for us as it is incongruous for the State to allege it and profess to believe it." 546 P.2d at 187.

Next earlier was *Boyd,* with the defendant charged with delivery and intent to deliver. The court reversed the second conviction, even though the defendant had not been sentenced on one count. Chief Justice Parker, in writing the opinion of the court, stated:

" * * * While prosecution of the two charges does not constitute double jeopardy, we have heretofore held that if a person is charged with delivery of a controlled substance and possession of the same substance with intent to deliver the latter is embraced in the former. *Jackson v. State,* supra, 522 P.2d at 1359–1360." 528 P.2d at 289.

The third case is *Jackson,* involving charges of delivery and intent to deliver. Chief Justice Parker quoted from an Ohio case, *State v. Johnson,* 112 Ohio App. 124, 165 N.E.2d 814, 820 (1960), and defined the Wyoming law:

" ' * * * [I]f the offenses charged are separate and distinct either with respect to statutory definition, or, because * * * they grow out of different transactions and different evidence is needed to prove each, then the constitutional inhibition against double jeopardy is not applicable and, so long as the offenses charged are not factually inconsistent, a defendant may be found guilty and judgment of sentence thereon may be had as to each of the offenses charged.' " 522 P.2d at 1359.

The earliest of the sequence cases is *Dorador,* with an opinion by Justice McIntyre, a case involving charges of delivery and possession with intent to deliver. Citing *State v. Tobin,* supra, and the then current case of *Loddy v. State,* Wyo., 502 P.2d 194, 197, (1972), *cert. denied* 414 U.S. 1134, 94 S.Ct. 877, 38 L.Ed.2d 760 (1974), the court stated, in quoting Justice Blume:

" 'A statute often makes punishable the doing of one thing or another, sometimes thus specifying a considerable number of things. Then, by proper and ordinary construction a person who in one transaction does all, violates the statute but once, and incurs only one penalty. Yet he violates it equally by doing one of the things.'

"The evidence in the instant case brings it within the rule pronounced in *Tobin.*" 520 P.2d at 231–232.

The basic law of Wyoming as carefully enunciated by Justice Blume has since, without question, continued until the apparent change by the majority opinion at this time by deviation from that long-established transaction rule and adoption of the different-evidence approach.[4]

---

3. The interesting relationship of the four cases is that all four arose from this writer's prior law firm, each was handled by Edward P. Moriarity, now of Spence, Moriarity and Schuster, and a reversal as to one count occurred in every case.

4. We would take note of the comment by Justice Stevens in a current United States Supreme Court decision as a directed goal:

"Today's decision is supported, though not compelled, by the important doctrine of *stare decisis,* the means by which we ensure that the law will not merely change erratically, but

The other two Wyoming cases to be noted are *Loddy,* supra, and *Dycus v. Wyoming,* Wyo., 529 P.2d 979 (1974), as tried by then District Judge Raper, with an opinion by Chief Justice Parker. Dycus was a controlled-substance case, with a dual charge of delivery and possession with intent to deliver, and with the same appellate reversal by application of the transaction rule. Loddy was a telephone-wire case, where the court rejected a dual charge of "steal, take and carry away," and one of "displace, remove, injure or destroy," as the second charge, by citing Tobin with approval and authenticating the transaction rule as applicable.

In the federal system, the circuits are not in agreement. The available cases for citation are extensive. See discussion in *United States v. Orzechowski,* supra, and 75 Yale L.Rev., supra. Without compilation of individual cases, it would appear that only the Fifth Circuit has a mixed standard of application of rules, and perhaps does generally apply the different-evidence test in the controlled-substance disjunctive provision statute. *State v. Hernandez,* 591 F.2d 1019 (5th Cir.1979). Note, however, the dissent which raised a question as to which rule was correct to follow, and then generally see *United States v. Berkowitz,* 662 F.2d 1127 (5th Cir.1981), and *United States v. Foundas,* 610 F.2d 298, *reh. denied* 615 F.2d 1130 (5th Cir.1980).

Clearly, moreover, in numerous cases the Tenth Circuit has applied the transaction rule. *United States v. Olivas,* 558 F.2d 1366 (10th Cir.), *cert. denied* 434 U.S. 866, 98 S.Ct. 203, 54 L.Ed.2d 142 (1977).

I do not find any basis in precedent or logic for this court to abandon the transaction rule and embrace the different-evidence test. Obviously the issue in Wyoming criminal law goes far beyond the distribution and possession with intent to distribute controlled-substance cases, and invades the whole field of criminal activity where multiple charges may be filed.

"In its traditional application, double jeopardy is a rule of finality: a single fair trial on a criminal charge bars reprosecution. Double jeopardy shares the purposes of civil law rules of finality; it protects the defendant from continuing distress, enables him to consider the matter closed and to plan ahead accordingly, and saves both the public and defendant the cost of redundant litigation. But double jeopardy is not simply res judicata dressed in prison grey. It was called forth more by oppression than by crowded calendars. It equalizes, in some measure, the adversary capabilities of grossly unequal litigants. It reflects not only our demand for speedy justice, but all of our civilized caution about criminal law—our respect for a jury verdict and the presumption of innocence, our aversion to needless punishment, our distinction between prosecution and persecution." [5] 75 Yale L.Rev. at 277–278.

This dissent is confined by the facts of this case to the conjunctively charged, disjunctively stated criminal statute, and does

---

will develop in a principled and intelligible fashion. That doctrine permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals, and thereby contributes to the integrity of our constitutional system of government, both in appearance and in fact. While *stare decisis* is not an inexorable command, the careful observer will discern that any detours from the straight path of *stare decisis* in our past have occurred for articulable reasons, and only when the Court has felt obliged 'to bring its opinions into agreement with experience and with facts newly ascertained.' *Burnet v. Coronado Oil & Gas Co.,* 285 U.S. 393, 412 [52 S.Ct. 443, 449, 76 L.Ed. 815] (1932) (Brandeis, J., dissenting)." *Vasquez v. Hillery,*

— U.S. —, 106 S.Ct. 617, 624–625, 88 L.Ed.2d 598 (1986).

**5.** After seven failures, it would seem that the prosecutorial officials would recognize that the appropriate pleading system for utilization of the disjunctive controlled-substance statutes is to plead in one count in the conjunctive. If any charge is proven, a conviction is validly secured, and at the same time the double-jeopardy concern and the continued argument about merger are avoided. By the utilization of the conjunctive charge in one count, the only change other than avoiding appeals and motion conflict is that possibly the prosecutorial plea-bargaining leverage is slightly diminished.

not involve different statutes which may be applied to similar events, e.g., conspiracy and principal-offense cases, as the subjects covered by the United States Supreme Court in a line of cases after Blockburger and more currently considered in *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), see note 2. Cf. *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); 62 Wash.U.L.Q., supra. See, as an interesting discussion from the Sixth Circuit perspective, *United States v. Nichols*, 401 F.Supp. 1377 (E.D. Mich.1975).

Addressing attention, then, to the application of the transactional principle for determination of the propriety of the separate charge of disjunctive elements of the controlled-substance statute to the facts existent in this case, it would appear clear that, as is frequently found in similar circumstances with other case law, where the transaction had not been completed by the departure of the accused from the place and circumstance of the contended delivery or sale before arrest is accomplished the multiple charges are not here justified. Consequently, in this regard, I would concur with the decision of the county court and determine that the analysis of the factual situation as related to the correct rule of law afforded a proper basis for the action taken.[6]

## II

Turning from solid precedent, past Wyoming cases and the apparent predominating rule of today that the transaction test should be utilized, a more difficult question under Wyoming law then remains. Actually, this time-of-consideration question is identical whether the transactional or different-evidence rule is embraced.

When in the criminal process may the merger question first be raised by the charged defendant?

Wyoming decisions give no real assistance, since in all cases the process went through to conviction and subsequent reversal. Dictum in those cases and discussion in other authorities include the following possibilities: (1) by motion at preliminary hearing; (2) by motion before trial in the district court; (3) by instruction; and (4) by unitary sentence.

The answer which I find is that the multiplicity complaints should not be made unless separate transactions exist or different evidence is to be questioned. In order to be tested, however, evidence will normally be required to evaluate and determine the transaction, which requirement is witnessed by the augmented case facts as earlier enumerated in this dissenting opinion.

With seven prior appeals and this eighth case now before the court, it is obvious that a decision is appropriate so that the law and its application are settled. Reason would suggest that the issue may be raised and considered at any stage where the motion is made *and the evidence is available* to determine the nature of the events occasioning the criminal charges. See, however, *Jerskey*, a case in which the defendant was bound over, convicted and sentenced on both charges, where the court said:

"There was but one transaction—one common scheme or plan—and, because one offense was merged with another, the convictions may not be stacked because the result would be to have twice

---

**6.** Likely Carter is not going to be further confronted with the events by another criminal charge. To that extent, this case is moot on the peculiar and unlikely facts that exist. The broader issue is whether an arrest in the act occasions a separate charge for prior possession or current retention of some controlled-substance material. The absurdity has been discussed in cases, and was specifically considered by the trial court in this case: If you sell your supply, only one crime is committed, but if you sell half as much, then two crimes are committed. Actually, the prosecutor in this case did not contend for such a result, and premised her argument on the nature of the substances as one being marijuana (smoking dope) and the other its liquid extract (honey oil). The buyer only purchased smoking dope in the delivery transaction, and the honey oil was retained by Carter who was then arrested at the scene of the sale transaction.

placed the defendant in jeopardy in that he would have received multiple punishment for the same offense at one trial. "It was therefore prejudical error for the court to enter judgment and sentence for more than one of the alleged crimes." 546 P.2d at 187.

In *Boyd,* the verdict and portion of the judgment relating to possession were reversed, and likewise in *Jackson.* In *Dorador,* it was said that only one sentence could be imposed, although the conviction was totally reversed on another basis.

Obviously, there are two times when the transactional nature of the event can be analyzed by a review of the facts, and those are at the close of the preliminary hearing and at the end of the introduction of evidence at the trial.

By further answer that I will give to the following question, it should consequently be held that the motions contending for a criminal-complaint merger could be validly determined as an aspect of the preliminary hearing proceeding.

### III

The third and even more significant principle to be addressed for the entire scope of the adjudicatory process in Wyoming criminal law is the portion of the decision of the majority that the county court judge, as the examining commissioner, lacked authority to dismiss Count II of the complaint on the contended defense that it merged. By discussion, it is apparently intended to limit the scope of that court proceeding to the assumption of a validly charged offense, and to leave for decision of the judge only the question, "If so, does probable cause exist?"

I cannot accept this conclusion as a limitation of the powers of the courts or as justified by the Wyoming criminal rules. Rule 7(b), W.R.Cr.P., is not limited to factual issues:

"(b) *Probable cause finding.*—If from the evidence it appears that there is probable cause to believe that an offense has been committed and that the defendant committed it, the commissioner shall forthwith hold him to answer in district court. The finding of probable cause may be based upon hearsay evidence in whole or in part. The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. Objections to evidence on the ground that it was acquired by unlawful means are not properly made at the preliminary examination. Motions to suppress must be made to the trial court as provided in Rule 16 and Rule 40(e)."

The rule provides one exception and one only, as carefully included, involving suppression questions, and this court, by present case extension, should not enact or extract other limitations.

The statutes for county courts likewise are not limited to factual issues as evidenced by the text:[7]

"County courts have jurisdiction in all criminal cases amounting to misdemeanor." Section 5-5-133, W.S.1977, 1985 Cum.Supp.

---

7. The present county court system received its birthright by a joint resolution adopted by the legislature in 1965 and then approved by the majority of the Wyoming voters in the general election of 1966. The endorsed statement for ballot inclusion personified the philosophy to serve for guidance toward a modern court system:

"Our state constitution establishes and prescribes the jurisdiction of justice of the peace courts; also, it gives the legislature authority to establish municipal and arbitration courts. This proposed amendment, if adopted, would eliminate all such courts from the constitution and, instead, would give the legislature the authority to establish the subordinate courts it deems best suited to our modern needs and provide for their jurisdiction and manner of functioning. In the meantime, the present system would continue in effect under existing statutes until changed by the legislature." S.J.R. 1, S.L. of Wyoming 1965.

A diminution of the functional responsibilities of the resulting county courts now 20 years later is not responsible.

It is recognized in counties without county courts that justices of the peace fulfill the examining commissioners' function. Unfortunately, not all are lawyers. The large predominance of cases will come before county court judges in the preliminary-hearing process.

"(b) Preliminary examinations for persons charged with a felony shall be conducted by the county court judge or county court commissioner.

"(c) Preliminary examinations of persons charged with a high misdemeanor shall not be conducted for a determination of probable cause." Section 5–5–134(b) and (c), W.S.1977, 1985 Cum.Supp.

Since those statutes give exclusive jurisdiction to the county courts for offenses involving up to one year confinement, there surely is not an implied limitation on preliminary hearing which requires court avoidance of legal issues.

I would distinguish *Haight v. State,* Wyo., 654 P.2d 1232 (1982), wherein the question involved was the presence of the complaining witness at preliminary hearing, as not relevant to the subject of the discretion of the commissioner to determine motions testing the validity of the charge made. Likewise, the United States Supreme Court case of *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), should not be considered to determine the capacity of the state to establish the extended scope of probable-cause judicial inquiry. Gerstein considers the minimum rights constitutionally required. In *Wilson v. State,* Wyo., 655 P.2d 1246 (1982), this court considered the use of hearsay as specifically authorized by Rule 7(b), W.R.Cr.P. I would not find the text to limit the examining commissioner's jurisdiction or discretion, where those questions were not the subject matter of that appeal, and the county court did find probable cause to bind the defendant over for trial, from which conviction resulted.

A question is raised about briefs in a preliminary-hearing proceeding. Factually in this case, the county judge, as the preliminary-hearing commissioner, asked counsel if they wished to submit briefs on the issue of merger. The prosecuting attorney requested that opportunity, with the defense counsel reluctantly concurring. Briefs were not requested by the court.

It would be improvident and unjustified by our rule to hold that in result the com-missioner is not permitted to consider various motions submitted by defense counsel or to obtain case authority relating to the decision which he must make, and is only permitted to assume a valid criminal charge even though in his experience as a lawyer or as a judge the contrary could clearly appear.

The differing text of Wyoming law would not lead me to accept *State ex rel. Berger v. Jennings,* 110 Ariz. 441, 520 P.2d 313 (1974), as applicable to Rule 7, W.R. Cr.P., which Wyoming rule requires the commissioner to find "probable cause to believe that *an offense has been committed,* and that the defendant committed it." (Emphasis added.)

This means to me, and I submit that this court should so hold, that the examining commissioner has responsibility in the interest of justice as a judicial authority to see that a properly charged offense is before him, and then find that the requirements of' probable cause are met by the evidence presented. Hypothetically, what sense is served in the completion of a preliminary hearing based upon an insufficient complaint with the resulting question of the validity of any succeeding criminal trial, or, more immediately, the requirement or result of return from the district court for rejection and dismissal at a later stage?

The issue is not the use of the preliminary hearing for discovery purposes, which has been subjected to extended litigation and subjective analysis by text writers, since that issue is not reasonably resolved by the cases and by the text of the preliminary-hearing rule. *Haight v. State,* supra. The provisions of Rule 7(b), W.R.Cr.P. are essentially identical with Rule 5.1, F.R. Cr.P.

The principle is, however, the recognized practical and constitutional significance of the preliminary hearing. *White v. Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); *Thomas v. Justice Court of Washakie County,* Wyo., 538 P.2d 42 (1975); *Campbell v. State,* Wyo., 589 P.2d 358 (1979); Note, *The Function of the Pre-*

*liminary Hearing in Federal Pretrial Procedure,* 83 Yale L.Rev. 771 (1974).

"The preliminary hearing performs many functions. If it is to perform these functions properly, magistrates and courts must review all of these functions and carefully weigh society's interest in the prosecution of criminals against the rights of the individual against whom criminal charges have been brought. It is hoped that the out-dated and unsound aspects of the preliminary hearing will fall by the wayside in the face of progressive procedural changes consistent with logic and justice. The features of the preliminary hearing have remained static for many years and its proper functions should be reconsidered in line with modern concepts of criminal justice." Note, *The Preliminary Hearing—An Interest Analysis,* 51 Iowa L.Rev. 164, 183 (1965).

Included as a noted function by discussion in the Iowa Law Review article is the elimination of unfounded and malicious complaints. I would add that those functions should also include improperly or improvidently pleaded multiple charges.

The purpose of the preliminary hearing was well defined in *Wood v. United States,* 75 A.D.C. 274, 128 F.2d 265, 270, 141 A.L.R. 1318 (D.C.Cir.1942), when the court said:

"The inquiry is essentially judicial. The subject matter is temporary restraint of the accused person's liberty. The function is to determine whether there is sufficient evidence to justify this. Commitment without evidence or on insufficient evidence would be arbitrary. The hearing, though informal, is in open court. It is not a Star Chamber affair. The court has power to examine the accused and others. *The decision requires the exercise of discretion on both facts and law."* (Emphasis added.)

The California Supreme Court defined the process:

" * * * 'The preliminary examination is not merely a pretrial hearing. "The purpose of the preliminary hearing is to weed out groundless or unsupported charges of grave offenses, and to relieve the accused of the degradation and expense of a criminal trial. Many an unjustifiable prosecution is stopped at that point, where the lack of probable cause is clearly disclosed." *Jaffe v. Stone,* 18 Cal.2d 146, 150, 114 P.2d 335, 338, 135 A.L.R. 775 [ (1941) ].' " *Jennings v. Superior Court of Contra Costa County,* 66 Cal.2d 867, 59 Cal.Rptr. 440, 428 P.2d 304, 312 (1967), quoting from *People v. Elliot,* 54 Cal.2d 498, 6 Cal.Rptr. 753, 354 P.2d 225, 229 (1960), overruled on other grounds in *People v. Pompa-Ortiz,* 27 Cal.3d 519, 165 Cal.Rptr. 851, 612 P.2d 941 (1980),

and also said in regard to the position of the state in that case that it would

" * * * reduce the preliminary hearing to an ex parte proceeding at which the defendant's presence would be a meaningless gesture." 428 P.2d at 312.

See also Graham and Letwin, *The Preliminary Hearing in Los Angeles: Some Field Findings and Legal-Policy Observations,* 18 U.C.L.A. L.Rev. 636, 916 (1971).

Adoption of the majority position in this case, which may occur without benefit of prior briefing by the involved judges or counsel generally representing criminal defendants, moves Wyoming substantially in that "meaningless gesture" direction.

I would deny the bill of exceptions to preserve the established rule for determining merger and to support the operational significance and stature of the preliminary hearing examining commissioner.